**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

EARL JEROME MCGAHEE                          :

    Petitioner,                          :

v.                                           :        CIVIL ACTION NO. 05-0042-KD-M

DONAL CAMPBELL,                              :

    Respondent.                          :

<u>ORDER</u>

Petitioner, Earl Jerome McGahee, a state prisoner currently in the custody of respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his 1986 convictions in the Circuit Court of Dallas County, Alabama, of two counts of capital murder, for which he received the death penalty.

This matter is now before the Court on petitioner's petition, respondent's answer, briefs, responses, and exhibits filed by the parties, and the state court record. Following a careful review of the petition and record, the Court finds that an evidentiary hearing is not warranted on the issues.[1]  <u>See</u> 28 U.S.C. § 2254(e)(2). For the reasons set forth below, the Court finds that

---

[1]Because petitioner filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." <u>Kelley v. Secretary for Dep't of Corrs.</u>, 377 F.3d 1317, 1337 (11th Cir. 2004). The legal standard for determining when an evidentiary hearing in a habeas corpus case is allowed is articulated in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> **(A)** the claim relies on–

petitioner is not entitled to habeas relief on the basis of any of the claims set forth in his petition.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[3]

> On September 11, 1985, Connie Brown (the appellant's ex-wife), Cassandra Lee and Dee Ann Duncan were all nursing students at George C. Wallace Junior College in Selma, Alabama.  That morning, Brown, Lee and Duncan were in a class of thirty-four students in a classroom in the Science Building at the junior college.  At approximately 10:00 that morning, the appellant came to this classroom and asked to see Brown.  The instructor, Shelia Guidry, told Brown that she could leave the classroom.  Brown left the room with the appellant and she went to the office of Joyce Howell, a secretary at the college, and asked to use the telephone.  Brown appeared nervous and Howell helped Brown dial the phone numbers.  Brown made calls to an elementary school and to her mother.  The appellant came into the office while Brown was

---

> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to establish that an evidentiary hearing is warranted in this case.

[2] On February 15, 2007, the Court issued an order dismissing twenty-eight of petitioner's seventy habeas claims as procedurally defaulted.  (Doc. 22).  The remaining claims are addressed herein.

[3] AEDPA directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).  "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  Id. (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

making the phone calls.  As a result of her conversation with Brown, Howell called campus security to remove the appellant from the campus.  Howell then walked Brown back to her classroom.

While Brown was out of the classroom, Guidry had recessed the class for a short break.  Brown returned to the class at the end of the break and took her seat.  Many of the students were in the classroom at this time because they had remained in the room during break or they had returned from the break.

Brown sat directly in front of Lee and to the right of Duncan. Shortly after Brown returned to the classroom, the appellant McGahee appeared at the door and asked Brown to come outside. Brown refused.

At this point, the appellant entered the classroom and shut the door.  He pulled a pistol from his pants and aimed it at Brown.  A shot was fired and the appellant began walking towards Brown. All of the students began fleeing the classroom.  Lee was unable to leave the classroom because Brown fell across her desk and then she (Lee) was shot by the appellant.  Duncan fell as she was leaving the classroom and remained on the floor and acted hurt.

Brown struggled to the front of the classroom and fell to the floor. The appellant then began kicking and stomping Brown.

Dana Andrews was walking down a hallway in the Science Building that morning when she saw the students running out of Guidry's classroom and heard gunshots.  She went to the room to see if she could help and pushed open the classroom door. Andrews saw the appellant "leaning over and he had her [Brown's] legs lifted up with his left arm and he had his right arm, he was pulling her panties off." (R-474).

Ferrin Eiland, an instructor at the college, went to Guidry's classroom when he heard the students screaming.  He looked through the door window and saw Brown lying on the floor naked. Brown's legs were propped up and parted and the appellant was kneeling between her legs.  Eiland saw the appellant strike Brown twice on the chest with his fists.

Charles Duckett, also an instructor at the college, went to Guidry's classroom when he heard there had been a shooting.  Duckett

3

looked in the door window and saw the appellant block the door with a chair. When Duckett heard several shots, he went downstairs and told Eiland to call an ambulance. When he returned to the classroom door, he saw the appellant with a gun in his hands and his hands were bloody. Duckett asked the appellant if he could help the people who were hurt and the appellant replied that no one was hurt and then waved the gun at Duckett.

While Dee Ann Duncan was lying on the floor pretending to be hurt, she heard the appellant say to Brown, "Get up, Bitch" (R. 780). He told Brown that nothing was wrong with her and he began kicking her. He then said several times, "give it to me like you had used to" and "you make my d___ hard" (R-781). Duncan noticed that Brown did not have her jeans on.

At some point, the appellant came over to Duncan and put his hands between her legs and began rubbing them. He then jerked her head up and asked her what was wrong. The appellant began striking Duncan's head with the pistol and Duncan blacked out.

Truett McGee testified that he went to 1410 Philpott in Selma on the morning in question to investigate an unauthorized use of a motor vehicle. He was told by a Mrs. Redd that the appellant had taken her car. Mrs. Redd was a relative of the appellant. While McGee was investigating this incident, he received a call that there had been a shooting at the college.

McGee proceeded to the college and went to the classroom in the Science Building. When he looked through the door window, the appellant pointed a pistol at him. McGee then heard a shot. McGee told the appellant to throw out his pistol and come out of the classroom. The appellant complied and was arrested and taken into custody.

Officer Jerry Ward of the Selma Police Department then took the appellant to a patrol car and read him his <u>Miranda</u> rights. While he was being transported to the police station, the appellant began talking. He stated, "Well, if the son of a bitch lives, it ain't my fault cause I gave her a free ticket to heaven. If the son of a bitch lives it's a miracle. It's only because Jesus must want her to." (R-761, 763). The appellant further stated that things didn't work out like he wanted them to so he "started busting caps (R. 763)." He told the police that, if he had taken all the shells in the classroom that he had in the car, the police would not have taken him alive.

4

When the police entered the classroom after the appellant had been taken into custody, they discovered Lee, Brown and Duncan in the classroom. Brown was already dead and Lee and Duncan were injured and were transported to Selma Medical Center.

Lee arrived at the hospital with multiple (five) gunshot wounds to her body. When she arrived at the hospital, Lee had no palpable blood pressure, she had suffered some blood loss and she was paralyzed from the waist down. Lee was resuscitated with fluids and given two pints of blood. Surgery was performed on Lee to repair an injury to her spleen. One of the gunshots caused an air leak in Lee's lungs but surgery could not be performed on the lungs because Lee's condition was not stabilized. After surgery, Lee's family requested that Lee not receive any more blood transfusions because she was a Jehovah's Witness.

Lee died on September 21, 1985 as a result of complications from the gunshot wounds, i.e., meningitis and adult respiratory distress syndrome. Medical experts testified that the fact that Lee did not receive any more blood transfusions after her family's request did not contribute to her death because they were able to compensate for any blood loss by other means.

Duncan suffered a depressed skull fracture but survived. As a result of her injury, she lost the ability to taste and smell.

An autopsy performed on Brown revealed that she died as a result of repeated blows to the face and head which resulted in multiple fractures to the skull and subsequent injury to the brain. Dr. Allen Stillwell, a forensic pathologist, testified that these injuries would be consistent with Brown's being hit with the butt handle of the gun and being stomped with a foot. He further stated that Brown had been strangled. Brown also received blunt trauma injuries to her upper abdomen area as well as two gunshot wounds to her left arm. However, these injuries were of a non-fatal nature. Stillwell found no evidence in Brown's body of recent sexual activity.

Lonnie Ray Hardin, a firearms and toolmarks expert with the Department of Forensic Sciences, testified that the bullets removed from Lee's and Brown's bodies by Dr. Stillwell were fired through the same .357 Magnum gun which the appellant threw out of the classroom. The hammer of this gun was found on the floor in the classroom. Hardin testified that it would take a considerable

5

amount of force to dislodge the hammer from the gun.  The State then rested its case.

The appellant's first three witnesses were the psychiatrists who examined him at the Taylor Hardin Secure Medical Facility and who served on the Lunacy Commission.

Drs. Omar Mohabbott, Marino S. Tulao and Kamal Nagi all testified that, based on their examinations of this appellant McGahee, they found him competent to stand trial.  Drs. Tulao and Nagi stated that they also found the appellant to be sane at the time these offenses were committed.  Dr. Mohabbott testified that he did not examine the appellant concerning his sanity at the time of these offenses.

Elizabeth Marie Sapala, a private psychiatrist appointed to assist the defense, testified that, although she found the appellant to be competent to stand trial, she believed the appellant lacked the capacity to conform his conduct to the requirements of law at the time of this offense.  She stated that the appellant was unable to resist the rage inside of him due to several stress factors, i.e., the appellant's unemployment, his financial situation, his divorce from Brown and subsequent custody disputes over their child, his problems with his mother and his substance abuse.

The appellant testified that he first met Brown when she was pregnant with her first child, Anwon, whom the appellant later adopted after he and Brown were married.  Brown and the appellant became friends and later married on September 12, 1980.  The appellant testified that the marriage took place because Brown told him she was pregnant but the appellant later learned that she was not pregnant.  Brown then became pregnant and had a child by the appellant, named Earl Jerome McGahee, Jr.  The appellant and Brown lived in New Orleans, Louisiana, because the appellant was in the Coast Guard and was stationed there.  While there, the appellant pleaded guilty to a child abuse charge and received counseling.  He testified that Brown treated him badly when they lived in New Orleans.  She would invite relatives to stay with them for long periods of time without his permission.  He found his wife at home one day dressed in a nightgown and a man was in the house.  One day the appellant came home and Anwon ran up to him and called him "Daddy."  Brown told Anwon to get away from the appellant because he wasn't Anwon's father.  The appellant stated he got mad and accidentally hit Anwon.  Brown

6

left the house with the two children and had the appellant arrested for cruelty to a juvenile.  The appellant pleaded guilty to that charge and served twelve months and twelve days in jail.

Brown returned to Selma after the appellant was arrested. She divorced the appellant and took back her maiden name, Brown. When the appellant was released from jail, he returned to Selma and lived with his mother while attending George C. Wallace Junior College.  In July of 1985, the appellant's mother "kicked him out of the house" and filed reckless endangerment charges against him.

On the day in question, the appellant went to his mother's house to talk to his sister.  As he was leaving, he noticed the keys to his mother's car.  He took the keys and drove the car to the college. He then went to Brown's classroom and asked her to get Earl, Jr., out of school so that he, the appellant, could see him.  Brown called the school and then told the appellant he couldn't take Earl, Jr., from the school.

The appellant then went back to his mother's car and got her gun. He went to the classroom to see Brown but she would not talk to him.  He pulled the pistol from his pants and said, "What about now?" (R. 968).  Brown jumped up and the appellant pulled the trigger.  The appellant then "went upside her head" with the pistol and kicked her in the head.  He stated he removed Brown's clothes because she had disgraced his name and he wanted to disgrace her. He denied making sexual advances toward her.

The appellant testified that he didn't mean to shoot Lee and he hit Duncan because he panicked.

The State presented several witnesses on rebuttal, including a clinical psychologist, to refute the appellant's allegations that he was insane at the time these offenses were committed.

McGahee v. State, 554 So. 2d 454, 456-59 (Ala. Crim. App. 1989).

In October, 1985, petitioner was indicted by the Dallas County Grand Jury on two counts of capital murder.  McGahee, 554 So. 2d at 456.  Petitioner entered a plea of not guilty to the

charges, and, following a jury trial in the Circuit Court of Dallas County, Alabama, petitioner was convicted on September 12, 1986, of two counts of capital murder in connection with the deaths of Connie Brown and Cassandra Lee, specifically: 1) intentional murder while subjecting or attempting to subject the victim to sexual contact by forcible compulsion in violation of § 2(a)(8), Act. No. 81-178, and 2) intentional death of two individuals by one act or pursuant to one scheme or course of conduct, § 2(a)(10), Act No. 81-178, as codified in Ala. Code § 13A-5-40. (Id.; Doc. 1 at 4-5). On September 13, 1986, the jury recommended, by a vote of eleven to one, that petitioner be sentenced to death. The trial judge accepted the jury's recommendation and sentenced petitioner to death by electrocution. (Id.).

Petitioner appealed his conviction to the Alabama Court of Criminal Appeals, and the court affirmed petitioner's conviction by memorandum opinion on May 12, 1989, but reversed petitioner's death sentence and remanded the case for a new sentencing hearing.[4] McGahee, 554 So. 2d at 471.

In June, 1991, a second sentencing hearing was conducted in Marengo County Circuit Court after the case was transferred from Dallas County as a result of pervasive publicity. (Doc. 1 at 5). Following the second sentencing hearing, the jury, by a vote of ten to two, recommended life imprisonment without the possibility of parole. (Id.). On February 13, 1992, the trial judge rejected the second jury's recommendation and again sentenced petitioner to death. (Id. at 6).

---

[4] At the original sentencing hearing, Roy Brown, Connie Brown's brother, testified that, upon hearing that petitioner had shot his sister, he was so aggrieved that he rushed to the school intending to shoot petitioner. The Alabama Court of Criminal Appeals found that the trial court's admission of that testimony at the sentencing phase was irrelevant and "constitutionally impermissible." McGahee, 554 So. 2d at 471.

On May 7, 1993, the Alabama Court of Criminal Appeals affirmed petitioner's conviction and death sentence.  McGahee v. State, 632 So. 2d 976 (Ala. Crim. App. 1993).  On December 17, 1993, the Alabama Supreme Court affirmed petitioner's conviction and death sentence, Ex parte McGahee, 632 So. 2d 981 (Ala. 1993), and denied rehearing on February 4, 1994.  (Doc. 1 at 6).  The United States Supreme Court denied petitioner's petition for a writ of certiorari on February 27, 1995.  McGahee v. Alabama, 513 U.S. 1189 (1995).

On December 6, 1995, petitioner filed a petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure, alleging numerous violations of state and federal law concerning the manner in which his convictions and sentence were obtained.  (Doc. 1 at 6).  On November 15, 1999, petitioner filed an amended Rule 32 petition and, on June 28, 2000, he filed a second amended Rule 32 petition.  (Id.).  On July 19, 2000, and July 21, 2000, the Dallas County Circuit Court conducted a hearing on petitioner's Rule 32 petition.  (Id.).  On April 25, 2001, the circuit court denied petitioner's Rule 32 petition.  (Id. at 7).

On May 30, 2003, the Alabama Court of Criminal Appeals affirmed the circuit court's denial of petitioner's Rule 32 petition.  (Id.; McGahee v. State, 885 So. 2d 191 (Ala. Crim. App. 2003)).  The Alabama Supreme Court denied petitioner's petition for a writ of certiorari on January 30, 2004.  Ex parte McGahee, 885 So. 2d 230 (Ala. 2004).  On January 21, 2005, petitioner filed the instant petition for a writ of habeas corpus.  (Doc. 1).

## II. DISCUSSION

As outlined above, petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, setting forth seventy claims in support of his request for habeas relief, twenty-

eight of which this Court has determined previously to be procedurally defaulted.[5]  (Doc. 1).

The Court will consider each of petitioner's remaining claims in turn.

A.      AEDPA's Standard of Review.

Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications

for writs of habeas corpus submitted by state prisoners.  Henderson v. Campbell, 353 F.3d 880,

889-90 (11th Cir. 2003).  As noted above, § 2254 was amended by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996),

which was effective April 24, 1996.  Id.  AEDPA applies to all petitions filed after its effective

date.  Id.  Since petitioner filed this petition on January 21, 2005, AEDPA applies to this case.

28 U.S.C. § 2254(d) provides that:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

Id.  In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice O'Connor, writing for a majority of

the Court, recognized that "§ 2254(d)(1) places a new constraint on the power of a federal

---

[5] For clarity, the Court has numbered petitioner's habeas claims 1-70.

habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

claims adjudicated on the merits in state court."

> A state-court decision is contrary to the Supreme Court's clearly established precedent (1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389 (2000).

> A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 120 S. Ct. at 1520. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). Moreover, the Act, as amended,

presumes as correct all determinations of factual issues made by a state court and places the

burden upon the petitioner of rebutting such a presumption of correctness by clear and

convincing evidence. 28 U.S.C. § 2254(e).

    B.    Review of Claims.

Having established the proper standard of review, the Court turns to petitioner's claims.

    1.    Ineffective Assistance of Counsel: Claims 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 28, 30, 31.

In his petition, petitioner asserts that he is entitled to relief under § 2254 based on twenty-

five separate grounds of ineffective assistance of counsel, in violation of his rights under the Sixth

11

Amendment.  (Doc. 1 at 15-42).  Respondent answers that each of these claims was considered by the state courts and denied on the merits.

In order to prevail on a claim of ineffective assistance of counsel, petitioner bears the burden of establishing by a preponderance of the evidence that his appellate counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. Strickland, 466 U.S. 668 (1984).  The elements to be considered are as follows:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id., 466 U.S. at 687.  Thus, petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness,"  Strickland, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'"  Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)).

An ineffective assistance of counsel claim is examined under the "totality of the circumstances."  House v. Balkcom, 725 F.2d 608, 615 (11th Cir. 1984).  An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight.  Messer v. Kemp, 760 F.2d 1080, 1088 (11th Cir. 1985).  A federal court must

12

apply a "heavy measure of deference to counsel's judgments." <u>Singleton v. Thigpen</u>, 847 F.2d

668, 670 (11th Cir. 1988) (quoting <u>Strickland</u>, 446 U.S. at 691).

> The test has nothing to do with what the best lawyers would have
> done.  Nor is the test even what most good lawyers would have
> done.  We ask only whether some reasonable lawyer at the trial
> could have acted, in the circumstances, as defense counsel acted at
> trial. . . .  We are not interested in grading lawyers' performances;
> we are interested in whether the adversarial process at trial, in fact,
> worked adequately.

<u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting <u>White v. Singletary</u>, 972

F.2d 1218, 1220-21 (11th Cir. 1992)).

With respect to habeas claim 2, petitioner claims that his trial counsel was ineffective in

pursuing an unsupported insanity defense at trial.  (Doc. 1 at 15-16).  Petitioner presented this

same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in

its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that his trial attorney was "completely
> ineffective to pursue an insanity defense," and that he should not
> have called the members of the Lunacy Commission to testify.
> (McGahee's brief at p. 57.)  He further argues that his attorney
> pursued a defense for which, at the outset of trial, he had no
> evidence.  The trial court denied the claim after determining that
> defense counsel was able to obtain some favorable information
> from the State psychiatrists, and that the testimony was consistent
> with the testimony of his expert.  The court also found that
> McGahee failed to establish that he suffered any prejudice.
>
> At the Rule 32 hearing, trial counsel testified that he
> presented an insanity defense because that was the only defense that
> could be supported.  He stated that after the court approved funds to
> retain a psychiatrist he contacted three experts and found they were
> unavailable.  The third psychiatrist referred him to Dr. Elizabeth
> Sapala, who testified at trial.  Counsel testified that Dr. Sapala was
> "sympathetic to Mr. McGahee," but he did not know until the day

13

of trial whether she would testify in support of his insanity defense. (R. 50.)  Although Rule 32 counsel states in his brief on appeal that "shockingly" defense counsel did not know until the middle of trial whether Dr. Sapala would testify in favor of his defense (McGahee's brief at p. 58), the record does not establish that this delay was due to any deficient performance by trial counsel.  To the contrary, his testimony at the hearing suggests that the delay was due to the unavailability of experts to testify on McGahee's behalf and to Dr. Sapala's late filing of her report.

Faced with these circumstances, trial counsel spoke with the State psychiatrists who had examined McGahee.  He testified at the hearing that he believed that he could elicit testimony from them that would be useful to his defense.  As the trial court noted in its order denying Rule 32 relief, trial counsel was able to elicit testimony from State psychiatrists about McGahee's difficult past, which allowed him to argue to the jury that the stress McGahee experienced caused him to commit this crime.

Defense counsel also elicited testimony from a member of the Lunacy Commission, Dr. Omar Mohabbott, that he was unaware that the trial court order had directed him to evaluate whether McGahee had been sane at the time of the crime.  Dr. Mohabbott stated that he evaluated only McGahee's competency to stand trial.  (TR. 2247-48.)  Dr. Kamal Nagi, another Lunacy Commission member who evaluated McGahee, testified that at the time of the crime, McGahee was suffering from stresses due to his divorce and family conflict.  Dr. Nagi stated that McGahee had also experienced stress because of being in jail and because of his financial difficulties.  (TR. 2291-92.)  Dr. Nagi testified about McGahee's unstable childhood and about the problems in his marriage to Connie.  (R. 2293-95, 2302, 2304.)  Dr. Nagi and Dr. Tulao, the third member of the Lunacy Commission, testified as to their clinical findings that McGahee was sane at the time of the crime.  After the psychiatrists testified, defense counsel made a motion for a mistrial and argued that McGahee was denied a competent evaluation as ordered by the trial court.  He specifically mentioned Dr. Mohabbott's failure to comply with the order and to determine whether McGahee was sane at the time of the crime.  (TR. 2333-37.)  The trial court denied the motion.

To the extent McGahee now argues that trial counsel was ineffective for putting forth an insanity defense, we find that the trial court correctly rejected this claim.  Trial counsel testified at the Rule 32 hearing that he presented an insanity defense because that

14

was the only defense that could be supported and that he found a psychiatrist who was sympathetic toward McGahee.  This was a reasonable strategic decision for counsel to make at the time, based on his evaluation of the case and on the overwhelming evidence against his client.

We next examine McGahee's claim that trial counsel was ineffective for calling to the stand the State's psychiatrists who, McGahee claims, presented damaging testimony adverse to his insanity defense.  Without deciding whether trial counsel's performance was deficient, we find that the trial court correctly denied relief on this claim because McGahee failed to establish prejudice.  McGahee, himself, characterizes the testimony of his trial expert, Dr. Sapala, as "anemic and factually and legally unsupported."  (McGahee's brief at p. 58.)  In a section of his brief to this Court addressing another issue, McGahee argues that the "insanity defense . . . was utterly lacking supportive evidence."  (McGahee's brief at p. 62.)  McGahee argues to this Court that an insanity defense could not have been presented in such a manner as to result in his acquittal.  Therefore, any alleged error in trial counsel's pursuit of that defense, such as calling the State's psychiatrists to testify, cannot have resulted in any prejudice to McGahee.  Because McGahee failed to establish the prejudice prong of the Strickland test, the trial court correctly denied his claim for relief.  The court's judgment as to this claim is due to be affirmed.

(Doc. 10, Vol. 53 at 10519-10524) (footnote omitted).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that petitioner failed to establish that his trial counsel was ineffective for pursuing an insanity defense.  The record shows that petitioner walked into a classroom of nursing students and opened fire, shooting his ex-wife and another female student repeatedly. (Doc. 10, Vol. 6 at 1015-1028).  After the other students and the instructor fled the classroom, petitioner rotated among his ex-wife and two other female victims who were unable to escape, bludgeoning, beating, and abusing them until the police arrived.  (Id.).  Petitioner eventually

15

surrendered to the police, and he was arrested, covered in blood.  (Id. at 1027-28).  The police

placed petitioner in a squad car to be transported to jail, and he began singing military songs,

"Billy, oh, Billy, have you heard Bodilly. . . ."  (Id. at 1026; Doc. 10, Vol. 12 at 2337).

Petitioner's psychiatric expert, Dr. Elizabeth Sapala, testified at trial that, because of stresses in

his life at the time of the murders, "he lacked capacity to conform his conduct to the requirements

of the law."  (Doc. 10, Vol. 6 at 1088).  Under the circumstances, the Court is satisfied that an

insanity defense "was a reasonable strategic decision for counsel to make at the time, based on his

evaluation of the case and on the overwhelming evidence against his client."  (Doc. 10, Vol. 53 at

10522-10523).  Moreover, had trial counsel not proffered an insanity defense, petitioner has not

shown that there is "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus,

petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 2, is without

merit.

    With respect to habeas claim 3, petitioner claims that his trial counsel was ineffective for

failing to present an intoxication defense.  (Doc. 1 at 16-17).  Petitioner presented this same

argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its

memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that the Rule 32 court erred when it denied
> his claim that trial counsel rendered ineffective assistance when he
> failed to present evidence to support an intoxication defense.  He
> contends that trial counsel did not fully investigate the
> circumstances of the offense and uncover evidence of McGahee's
> intoxication.  He asserts that such evidence would have supported a
> defense that he was incapable of forming the intent to commit
> capital murder.  We disagree.

16

In his second amended petition, McGahee claimed that counsel should have spoken with the officers involved in McGahee's arrest and with the people who spent time with McGahee in the 24 hours preceding the shooting.  He further claimed that trial counsel should have developed "a sufficient relationship" with McGahee so that McGahee had been willing to talk about his alcohol dependence and consumption.  (C. 529-530.) At the evidentiary hearing, trial counsel testified that, before the trial, McGahee told him that he had consumed "a couple" of alcoholic drinks before the shooting, but that he did not "in any kind of way" understand McGahee to be claiming that the alcohol influenced his behavior.  (R. 40.)  "As a result," counsel stated, "I did not make that as an issue, as a major issue for the jury to decide in the first case, because I didn't have anything of any substance." (R. 40.)  Counsel testified that, after the first trial and before the second sentencing hearing, McGahee told him that he consumed some quantity of alcohol on the morning of the murder.  (R. 41.) Counsel further testified that, at the second sentencing hearing, he questioned the witnesses at the scene about the odor of alcohol, and "they were not supportive."  (R. 42.) McGahee's mother testified that she never saw her son consume alcohol, but that she believed he was drinking to excess in the months before the murder.  (R. 96-97.)  McGahee's brother testified that he did not see McGahee drink alcohol, but he could sometimes smell alcohol on his brother.  (R. 145.)

The trial court denied relief on this claim of ineffective assistance.  The trial court correctly noted that the police officers testified at trial that McGahee appeared to be calm and not under the influence of alcohol when he was arrested.  In the guilt phase of his trial, McGahee testified that he had consumed no hard liquor in the days before the murder, that he had drunk a couple of beers the night before the murder, and that he was not claiming that he had been under the influence of alcohol when he committed the crimes. (TR. 2418, 2448.)  As the trial court stated, at his second sentencing hearing, McGahee testified that he had not previously told his attorney and his experts that he had drunk alcohol before he committed the murders.  At the second sentencing hearing, McGahee testified, "I did not share with any of these psychiatrists or anybody.  The first time it was found out that I was drinking on the day of the crime was when I come and confided right then when Bruce Boynton [defense counsel] asked me."  (TR. 3270.) McGahee testified that he did not tell anyone that he had been drinking on the morning of the murder because he had not trusted anyone, not even his mother.  (TR. 3274.)

17

The record demonstrates that additional efforts by counsel to investigate McGahee's drinking and develop an intoxication defense would have been futile.  Moreover, the evidence presented at the evidentiary hearing does not establish that McGahee was intoxicated at the time of the murders.  McGahee's testimony demonstrates that he deliberately failed to disclose details about his drinking to his attorney and to all of the experts involved in the case until the day he testified at his second sentencing hearing.  The record does not support either deficient performance or prejudice.

> " ' "The absence of any additional evidence can be attributed not to trial counsel but to petitioner and his family.  Trial counsel's representation was not deficient simply because petitioner's coram nobis counsel developed some arguably mitigating evidence not presented at trial where trial counsel made a reasonable effort to discover such evidence.  Burger v. Kemp, 753 F.2d 930, 938-939 (11th Cir.1985)." ' "
>
> Adkins v. State, [Ms. CR-99-0834, August 31, 2001] --- So. 2d ----, ---- (Ala. Crim. App. 2001) (opinion on return to remand).  As the United States Court of Appeals for the Eleventh Circuit observed in an analogous case: "Counsel cannot be deemed deficient for failing to present additional evidence of mitigation of which they were unaware due to [the defendant's] refusal to assist them in obtaining the information."  Sims v. Singletary, 155 F.3d 1297, 1316 (11th Cir.1998).  Therefore, we affirm this portion of the trial court's judgment.

(Doc. 10, Vol. 53 at 10493-10497).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to present an intoxication defense.  Petitioner's own testimony at trial established that he had consumed only "a couple of beers" the night before his attack on his ex-wife and the other nursing students.  (Doc. 10, Vol. 6 at 1042).  At his resentencing hearing, petitioner testified that, actually, he had drunk "a six pack of beer

and some Thunderbird" on the morning of the crime.  (Doc. 10, Vol. 12 at 2319-19).  When

questioned by his trial counsel about the fact that he was disclosing his alcohol consumption for

the first time at his resentencing hearing, petitioner stated, "I had been drinking that morning to

(sic) when I went out there.  But I didn't want you to know that."  (Id. at 2320).  Then, when

asked on cross-examination at the resentencing hearing, "when did you first tell Mr. Boynton

[trial counsel] that you had been drinking on the day of the murder," petitioner responded, "when

he was examining me this morning."  (Id. at 2370).  Under these circumstances, trial counsel was

not deficient for failing to pursue an intoxication defense at trial.  Moreover, even if trial counsel

had presented an intoxication defense to the jury, petitioner has not shown that there is "a

reasonable probability that . . . the result of the proceeding would have been different."

Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as

alleged in habeas claim 3, is without merit.

   With respect to habeas claim 4, petitioner claims that his trial counsel was ineffective for

failing to request a jury instruction on intoxication.  (Doc. 1 at 19-20).  Petitioner presented this

same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in

its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee next argues that the lower court abused its
> discretion when it denied his claim that trial counsel was ineffective
> because he failed to request an instruction on intoxication and failed
> to request lesser-included offense instructions based on his
> intoxication.  We disagree.  The trial court held that defense counsel
> was not deficient for failing to request the foregoing instructions
> because the record contained no evidence to support such
> instructions.  As discussed in the previous section of this opinion,
> the officers who had contact with McGahee after the murders did
> not detect the odor of alcohol or believe McGahee was intoxicated.
> When he spoke to his attorney and to all of the mental health

experts, McGahee consistently denied that he had consumed
alcohol before the murders.  When he testified at his second
sentencing hearing, McGahee for the first time claimed that he was
intoxicated on the day of the murder.  Thus, at the guilt phase of
McGahee's trial, no evidence had been presented that would have
supported instructions on intoxication or on any lesser-included
offense based on intoxication.  Trial counsel's performance was not
deficient, and McGahee suffered no prejudice.  Therefore,
McGahee was not entitled to any relief on this claim, and we affirm
the trial court's judgment as to this issue.

(Doc. 10, Vol. 53 at 10497-98).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of
Criminal Appeals, for the reasons stated in its memorandum opinion and for the reasons discussed
in relation to habeas claim 3, that petitioner failed to establish that his trial counsel was
ineffective for failing to request a jury instruction on intoxication.  Trial counsel was not deficient
for failing to request a jury instruction on a meritless defense.  Moreover, even if trial counsel had
requested such an instruction, petitioner has not shown that there is "a reasonable probability that
. . . the result of the proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus,
petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 4, is without
merit.

With respect to habeas claim 6, petitioner claims that his trial counsel was ineffective for
failing to present evidence of alcohol dependence, cognitive impairment, and inability to respond
appropriately to stress during the sentencing phase of his trial.  (Doc. 1 at 21-23).  Petitioner
presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32
proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court
stated:

20

McGahee next argues that trial counsel's performance was deficient because, he says, counsel failed to effectively present to the jury and to the judge evidence that McGahee could not manage the stress of his relationship with Connie and that he responded to the stress by abusing alcohol. He claims that counsel should have presented witnesses in addition to the experts he did present, to corroborate the experts' testimony. McGahee argues also that counsel should have presented evidence that McGahee was intellectually impaired. The trial court rejected all of the claims. First, the court found that counsel presented abundant evidence in mitigation at the second sentencing hearing, including two mental health experts and McGahee, himself. Second, the court noted that the jury recommended that McGahee receive a sentence of life imprisonment without parole and that McGahee received the best result he could have received from the jury. Third, the court found that trial counsel presented the evidence about the stressors McGahee experienced; about McGahee's inability to cope with those stressors; and about his alcohol abuse and its effect on his behavior. Finally, the court found that newly presented evidence indicating that McGahee functioned in the low average range of intelligence was not mitigating. The court concluded that McGahee failed to prove either that trial counsel was deficient or that he was prejudiced. The court also stated that it remained convinced, even after evaluating the evidence presented at the Rule 32 hearing, that death was the proper sentence in the case.

On appeal, McGahee cites numerous cases for the proposition that counsel can be found ineffective for failing to present evidence of McGahee' substance abuse, low IQ, and emotional problems. He argues: "Had counsel effectively presented this evidence, the jury and the sentencing authority would have viewed Mr. McGahee's actions as a tragic outcome of numerous diverse circumstances, creating an explosive outburst that tragically led to Mr. McGahee's capital trial." (McGahee's brief at p. 96.) McGahee's argument seems to ignore the fact that the jury returned a recommendation of life imprisonment without parole. McGahee also seems to ignore the fact that trial counsel presented much of the evidence that Rule 32 counsel now argues should have been presented. This is not a case in which the jury and judge heard no evidence in mitigation. As the trial court noted, the fact that Rule 32 counsel would have presented the evidence differently or would have presented other evidence in an attempt to prove the same mitigating circumstances does not establish ineffective assistance of

21

counsel. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

We find no abuse of discretion in the trial court's findings of fact or conclusions of law on this claim. Trial counsel presented substantial evidence in mitigation and the jury returned with the lesser of the two available sentencing recommendations. The Rule 32 court determined that the additional evidence presented at the hearing was either cumulative of evidence presented at the second sentencing hearing or it was not mitigating. The court further stated that it remained convinced that death was the proper sentence. McGahee has failed to prove deficient performance or prejudice. We affirm the trial court's denial of this claim for relief.

(Doc. 10, Vol. 53 at 10536-39).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to present evidence of alcohol dependence, cognitive impairment, and inability to respond appropriately to stress during the penalty and sentencing phases of his trial. The record shows that trial counsel did present extensive mitigating evidence at petitioner's second sentencing hearing, including evidence of petitioner's alcohol abuse and inability to cope with stress. (Doc. 10, Vol. 12 at 2250-2367). Trial counsel was not deficient in this regard. Moreover, even if trial counsel had presented every single piece of evidence of alcohol dependence, cognitive impairment, and inability to manage stress urged by petitioner, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 6, is without merit.

With respect to habeas claim 7, petitioner claims that his trial counsel was ineffective for failing to discover and present mitigating evidence that was available from his family and friends regarding his devotion to his church, his military service, and his childhood of poverty and deprivation. (Doc. 1 at 23-26). Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that trial counsel rendered ineffective assistance when he failed to present any testimony at the sentencing hearing before the trial judge from his family members, childhood friends, and community members who knew him, and whose testimony would have provided additional mitigating evidence. He contends that if such evidence had been presented to the trial court, the trial court would not have overridden the jury's recommendation that McGahee be sentenced to life imprisonment without parole. The trial court denied McGahee's claim and, in its order denying relief on this claim, the court discussed in detail the evidence and its rationale for the decision.

> At the evidentiary hearing, McGahee presented the testimony of some of his family members regarding their love for him and the impoverished conditions in which he was raised. Other witnesses testified about McGahee's attendance at church as a child and that he continued practicing religion during his incarceration. In its order denying relief on this claim, the trial court noted that at McGahee's resentencing hearing, trial counsel presented substantial evidence in mitigation, including evidence about McGahee's impoverished childhood, the death of his father, his military career, and his religious experience in prison. The court noted that two mental health experts testified about McGahee's dependence on alcohol and the resulting effects on McGahee's behavior. Also at the resentencing hearing, a prison guard testified on McGahee's behalf and stated that McGahee frequently studied his Bible and that he shared his knowledge of the Bible with others in the prison. The Rule 32 court stated in its order that, after the second sentencing hearing was held, the jury recommended by a vote of 10-2 that McGahee be sentenced to life imprisonment without parole. The court noted that McGahee received from the jury the best sentencing recommendation that he could have received. The

23

court further stated that, at the resentencing proceeding, it had considered the evidence presented and had determined that the aggravating circumstances outweighed the mitigating circumstances, and it imposed a sentence of death.

The court discussed in detail the evidence presented at the Rule 32 hearing and the evidence presented at McGahee's resentencing hearing. The court concluded that most of the evidence presented at the Rule 32 hearing in support of this claim was cumulative to evidence presented at the second sentencing hearing. The court further stated that, even if the evidence had been presented at the resentencing hearing, the court would have given it little or no weight. The court explained, for example, that evidence of McGahee's family members' love for him and of McGahee's supportiveness of his family would have been considered along with testimony that McGahee's family members had evicted him from their homes and had telephoned the police and had him arrested, and that he had stolen his mother's vehicle on the day of the murder because he was angry at being evicted from her home. The trial court also discussed that the testimony about McGahee's religiosity would have been largely cumulative to the testimony presented at trial.

The Rule 32 court concluded that McGahee had failed to establish deficient performance by trial counsel or prejudice as a result of counsel's performance. The court stated that the fact that trial counsel obtained a life-without-parole recommendation from the jury established that McGahee received an adequate penalty-phase defense. The court further stated that it had reviewed the evidence presented at the Rule 32 hearing and was still of the opinion that the death penalty was appropriate in this case.

Postconviction claims that defense counsel should have conducted further investigation and presented additional evidence in mitigation are not uncommon in capital-murder cases. We have previously stated:

" 'There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness

24

for not calling every witness and friend who was willing to testify.  To hold otherwise would clog an already overburdened system with repetitious testimony.  The appellant has failed to satisfy either prong of the <u>Strickland</u> test.'

" <u>State v. Tarver</u>, 629 So. 2d 14, 21 (Ala. Crim. App.1993), cert. denied, 511 U.S. 1078, 114 S. Ct. 1664, 128 L. Ed. 2d 380 (1994)."


<u>Williams v. State</u>, 783 So. 2d 108, 118 (Ala. Crim. App. 2000).

We have held, "Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence." <u>Id.</u> at 117.

Trial counsel could have called more witnesses at the penalty-phase hearing before the trial judge, with the hope that the additional information would have convinced the trial judge to agree with the jury's recommendation and to sentence McGahee to life imprisonment without parole.  The same can be said after <u>any</u> sentencing hearing in a capital case in which a death sentence is imposed after the jury recommended a sentence of life imprisonment without parole.  However, counsel at the Rule 32 hearing did not ask trial counsel any questions about his reasons for not calling the additional witnesses to testify.  Because he has failed to present any evidence about counsel's decisions, we view trial counsel's actions as strategic decisions, which are virtually unassailable.  <u>Key v. State</u>, [Ms. CR-99-0220, March 1, 2002] --- So. 2d ---- (Ala. Crim. App. 2002).  Furthermore, as the Rule 32 court noted, counsel did present evidence of McGahee's military record and of his religious conversion, and that evidence was found to be mitigating and was weighed against the aggravating circumstances.  Moreover, the trial judge who presided over McGahee's second sentencing proceeding was the judge who presided over the Rule 32 proceedings, and the judge stated that, even if the additional proposed mitigation evidence had been presented at the sentencing hearing, the evidence would have failed to convince the court that the aggravating circumstances did not outweigh the mitigating circumstances.  Clearly, McGahee has failed to establish the prejudice prong of the <u>Strickland</u> test, and he cannot, therefore, prevail on this claim.

> "Because Dill has not shown that any additional
> evidence would have changed the trial court's
> decision at sentencing, we agree with the trial court's
> ruling that trial counsel did not render ineffective
> assistance with regard to the investigation and
> presentation of mitigating evidence during the
> sentencing phase of Dill's trial."
>
> Dill v. State, 767 So. 2d 366, 372 (Ala. Crim. App. 1999).
>
>
> For the foregoing reasons, we find no abuse of the trial
> court's discretion and we affirm the trial court's decision to deny
> McGahee relief on this claim.  Trial counsel's performance at the
> resentencing hearing was not deficient, and McGahee failed to
> establish that he suffered any prejudice as a result of counsel's actions.

(Doc. 10, Vol. 53 at 10530-36) (footnotes omitted) (emphasis in original).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of
Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to
establish that his trial counsel was ineffective for failing to present additional mitigating evidence
of the hardships of petitioner's childhood, his military service, and his faithfulness to his religion.
The Court has reviewed the record at length, and it fully supports the state court's finding that
petitioner's trial counsel presented mitigating evidence on these issues.  (Doc. 10, Vol. 12 at
2250-2401; Doc. 10, Vol. 13).  Trial counsel was not deficient for failing to present additional
evidence of this nature.  Moreover, even if trial counsel had presented the very evidence urged by
petitioner, petitioner has not shown that there is "a reasonable probability that . . . the result of the
proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of
ineffective assistance of counsel, as alleged in habeas claim 7, is without merit.

With respect to habeas claim 8, petitioner claims that his trial counsel was ineffective for

26

failing to present adequate evidence of his exceptional conduct while in prison (Doc. 1 at 26-27).

As discussed above in relation to habeas claim 7, petitioner presented these same arguments to the

Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum

opinion affirming the trial court's denial of relief, the court stated:

> McGahee's next claim on appeal is that trial counsel failed to present "adequate evidence" that McGahee was a model prisoner while he was incarcerated. He argues that documentary evidence of his good adjustment on death row would have had a powerful effect on the jury and on the judge. The Rule 32 court denied this claim, finding that trial counsel had called a prison guard at the second sentencing hearing and that the guard had testified that McGahee appeared to have had a religious conversion and that McGahee appeared to be sincere in his beliefs. As the court noted, and as this Court has noted in preceding portions of this opinion, the jury recommended that McGahee receive a sentence of life imprisonment without parole. Therefore, McGahee's claim that admission of the prison records would have affected the jury's decision is meritless.

> . . . In its evaluation of the prison records presented at the Rule 32 hearing, the court stated that McGahee's status as a model prisoner was not mitigating in light of the crime McGahee committed, and further stated that it continued to believe that death was the appropriate sentence for McGahee. Because McGahee failed to establish that the result of the proceeding would have been different if the prison records had been admitted at the second sentencing hearing, he has failed to prove that counsel was ineffective. We find no abuse of discretion with regard to the trial court's determination that the failure to introduce the prison records into evidence did not constitute ineffective assistance of counsel.

(Doc. 10, Vol. 53 at 10531, 10539-41).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to

establish that his trial counsel was ineffective for failing to present additional mitigating evidence

of his exemplary behavior as a prisoner on death row.  The Court has reviewed the record at length, and it fully supports the state court's finding that petitioner's trial counsel presented mitigating evidence of this very nature.  (Doc. 10, Vol. 12 at 2252, 2254-55, 2262-63; Doc. 10, Vol. 13 at 2493-98).  Thus, as discussed in relation to habeas claim 7, trial counsel was not deficient in this regard.  Moreover, even if trial counsel had presented additional evidence of these matters, as urged by petitioner, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 8, is without merit.

With respect to habeas claim 9, petitioner claims that his trial counsel was ineffective for failing to adequately argue a motion that he be allowed to present evidence of the physical effects of electrocution as mitigating evidence.  (Doc. 1 at 27).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that trial counsel was ineffective for failing to adequately argue that he had the right to present evidence of the effects of electrocution as mitigating evidence.  The trial court rejected this claim, stating that trial counsel attempted at the resentencing hearing to present the evidence, so his performance was not deficient.  Further, the court noted, McGahee did not present any evidence in support of this claim at the Rule 32 hearing.  The court further found that the evidence McGahee sought to present was not mitigating, as determined by Alabama's appellate courts.  Gaddy v. State, 698 So. 2d 1100, 1142 (Ala. Crim. App. 1995), aff'd, 698 So. 2d 1150 (Ala.1997).  We agree with the trial court's analysis of this claim.  Because counsel attempted to present the evidence, and because the evidence regarding electrocution is not mitigating evidence, trial counsel's performance was not deficient and McGahee suffered no prejudice.[FN7]

(Doc. 10, Vol. 53 at 10545-46).

The court further noted:

> Because the primary method of execution in Alabama has been changed to lethal injection, McGahee's argument appears to have been rendered moot.

(Id. at 10546, n.7).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to argue adequately that he should be allowed to present mitigating evidence of the physical effects of electrocution.  Petitioner does not dispute that his trial counsel attempted to present mitigating evidence of the physical effects of electrocution and was refused by the court at the resentencing.  (Doc. 10, Vol. 12 at 2224-25; Doc. 31 at 135).  Thus, trial counsel was not deficient in this regard.  Moreover, as the state court noted, the primary method of execution in Alabama has been changed from electrocution to lethal injection.  See Ala. Code § 15-18-82.1 ("A death sentence shall be executed by lethal injection, unless the person sentenced to death affirmatively elects to be executed by electrocution.").  The new method of execution became effective July 1, 2002, and applies to all inmates currently on death row.  Lewis v. State, 889 So. 2d 623, 689 (Ala. Crim. App. 2003).  Because any claims related to this method of execution are moot, petitioner has suffered no prejudice from his trial counsel's alleged deficiency in failing to present mitigating evidence of the physical effects of electrocution.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 9, is without merit.

With respect to habeas claim 11, petitioner claims that his trial counsel was ineffective for

29

failing to prevent the State from eliciting improper testimony from a court appointed psychiatrist,

Dr. Kamal Nagi, during the penalty phase, that petitioner was able to appreciate the criminality of

his actions.  (Doc 1 at 28; Doc. 31 at 138-39).  Petitioner claims that Dr. Nagi's testimony was

based, in part, on information contained in a police report and social workers' reports that were

not admitted into evidence.  (Doc. 1 at 28).  Petitioner presented this same argument to the

Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum

opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that trial counsel failed to
> object to Dr. Nagi's testimony, which, he says, was
> improper because it was based on information from
> reports (sic) not been admitted into evidence, in
> violation of Ex parte Wesley, 575 So. 2d 127 (Ala.
> 1990).  The trial court rejected this claim, finding
> that McGahee presented no evidence at the Rule 32
> hearing on this allegation of error.  The court further
> stated that, because the Alabama Supreme Court
> held that the trial court's reliance on Dr. Nagi's
> testimony had been proper, McGahee had failed to
> establish that he suffered any prejudice as a result of
> trial counsel's failure to object to the testimony.
>
> We find no error in the trial court's analysis
> of this claim.  The Alabama Supreme Court held that
> no error occurred when the trial court considered Dr.
> Nagi's testimony, even though the expert's
> conclusions were based on reports that had not been
> admitted into evidence, because hearsay can
> properly be considered during the penalty phase of
> capital proceedings.  Ex parte McGahee, 632 So. 2d
> 981, 982-83 (Ala. 1993).  Because the testimony was
> properly admitted, counsel was not deficient for
> failing to object to it.  McGahee failed to establish
> either prong of the Strickland test.  The trial court's
> judgment as to this issue is affirmed.

(Doc. 10, Vol. 53 at 10543-44).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to prevent the State from eliciting testimony from Dr. Nagi that was based, in part, on hearsay. As the Alabama Supreme Court held in Ex parte McGahee, 632 So. 2d 981, 983 (Ala. 1993), when it affirmed petitioner's resentencing:

> "'Courts are permitted to consider hearsay testimony at sentencing. . . . While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability. . . .'" Kuenzel v. State, 577 So. 2d 474, 528 (Ala. Crim. App.1990), aff'd, 577 So. 2d 531 (Ala. 1991), cert. denied, 502 U.S. 886, 112 S. Ct. 242, 116 L. Ed. 2d 197 (1991) (quoting United States v. Giltner, 889 F.2d 1004, 1007 (11th Cir. 1989)).

The record shows that petitioner's trial counsel conducted an extensive cross-examination of Dr. Nagi related to his testimony that petitioner was competent at the time that he committed the murders. (Doc. 10, Vol. 13 at 2443-2492). Because petitioner was given an opportunity to refute Dr. Nagi's testimony and because Dr. Nagi's testimony bore a "minimal indicia of reliability," it was admissible. United States v. Giltner, 889 F.2d 1004, 1007 (11th Cir. 1989). Thus, trial counsel was not deficient for failing to prevent Dr. Nagi's testimony. Moreover, even if trial counsel had convinced the court to exclude Dr. Nagi's testimony that petitioner was able to appreciate the criminality of his actions, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 11, is without merit.

With respect to habeas claim 12, petitioner claims that his trial counsel was ineffective for failing to object during his resentencing to the introduction of prejudicial photographs of the victims' bodies as they appeared at the crime scene. (Doc. 1 at 28-29, 77; Doc. 10, Vol. 11 at 2132-2150). Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that trial counsel was ineffective for failing to object to the introduction of photographs during the penalty phase of trial. He argues that the photographs were irrelevant to the determination whether aggravating circumstances existed. The trial court rejected this claim, finding that at the Rule 32 hearing, no questions were asked of trial counsel regarding his failure to object to the photographs, and that McGahee, therefore, failed to overcome the presumption that defense counsel's actions were reasonable. The court also stated that because the State relied on the aggravating circumstance that the murders were especially heinous, atrocious, and cruel, photographs of victims' bodies at the crime scene were relevant. We agree with the trial court's analysis of this claim of error, and we find no abuse of the trial court's discretion with regard to this claim.

(Doc. 10, Vol. 53 at 10548-49).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to object during his resentencing to the introduction of prejudicial photographs of the victims' bodies at the crime scene. As the state court found, the State did rely on the aggravating circumstance that the murders were especially heinous, atrocious, and cruel. (Doc. 10, Vol. 13 at 2537). As such, photographs of the victims'

32

bodies at the crime scene were relevant and admissible.  See Giles v. State, 632 So. 2d 568, 575

(Ala. Crim. App. 1992) ("'The photographs [of the murder victims' bodies at the scene] depict the

location of the crime, the manner in which it was carried out, and its viciousness, all of which

were highly relevant to the issues in the case. . . .  They were probative in proving the aggravating

circumstance that the crime was committed in an especially heinous, atrocious, or cruel manner as

compared to other capital offenses.'") (citations omitted)).  See also U.S. v. Brown, 441 F.3d

1330, 1362 (11th Cir. 2006) (photographs of the homicide victim were relevant at the penalty

phase of the trial in determining whether the "heinous, cruel, or depraved" aggravating

circumstance existed).  Thus, trial counsel was not deficient for failing to object to the

introduction of this admissible evidence.  Moreover, even if trial counsel had objected to the

introduction of the prejudicial photographs and had succeeded in having them excluded,

petitioner has not shown that there is "a reasonable probability that . . . the result of the

proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of

ineffective assistance of counsel, as alleged in habeas claim 12, is without merit.

With respect to habeas claim 13, petitioner claims that his trial counsel was ineffective for

failing to object when the trial judge overrode the jury's recommendation of life imprisonment.

(Doc. 1 at 29).  Petitioner presented this same argument to the Alabama Court of Criminal

Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial

court's denial of relief, the court stated:

> McGahee argues that trial counsel was ineffective for failing
> to object to the trial court's override of the jury's 10-2
> recommendation that he receive a life-without-parole sentence.  He
> claims that the trial court's override of the jury's sentence was
> unconstitutional and was based on the court's improper findings as
> to aggravating and mitigating circumstances.  The trial court

33

rejected this allegation of error, finding that McGahee failed to present any evidence at the Rule 32 hearing in support of this claim. The court further stated that it firmly believed that death was the appropriate sentence for McGahee, and that McGahee was not prejudiced by counsel's failure to object at the hearing to the trial court's override. Finally, the court stated that appellate courts have upheld Alabama's override procedure.

We agree with the trial court's analysis of this claim. McGahee did not present any evidence to establish that counsel's performance was deficient or that he suffered any prejudice. Alabama's jury override procedure has been upheld by appellate courts. E.g., Ex parte Jackson, 836 So. 2d 979, 988-89 (Ala. 2002). In its order denying Rule 32 relief, the trial court repeatedly stated that it continued to believe that death was the proper sentence for McGahee.

To the extent that McGahee argues that the trial court improperly considered the nonfatal injuries Dee Ann Duncan suffered when finding that the crime was especially heinous, atrocious, or cruel, the trial court stated that it did not consider Duncan's injuries when it made its aggravating circumstance finding. The court further noted that, on direct appeal following the second sentencing hearing, the Alabama Supreme Court found no indication that the trial court relied on any improper evidence merely because the court mentioned Duncan's injuries. Ex parte McGahee, 632 So. 2d 981, 983-84 (Ala. 1993).

Based on the foregoing, we find no abuse of discretion in the trial court's denial of this claim.

(Doc. 10, Vol. 53 at 10546-48) (footnote omitted).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to object to the trial court's override of the jury's recommendation of life imprisonment. First, Alabama's jury override procedure has been upheld as constitutional in the state and federal courts. See Harris v. Alabama, 513 U.S. 504, 515 (1995) ("The Constitution permits the trial judge, acting alone, to impose a capital sentence. It is thus not offended when a State further requires the sentencing judge to consider a

jury's recommendation and trusts the judge to give it the proper weight."); McNair v. Campbell, 307 F. Supp. 2d 1277, 1339 (M.D. Ala. 2004) ("Neither Alabama law nor Supreme Court precedent has changed since Harris upheld the constitutionality of Alabama's sentencing scheme."), reversed, in part, on other grounds, 416 F.3d 1291(11th Cir. 2005); see also Ring v. Arizona, 536 U.S. 584, 597 n.4 (2002) (requiring that the existence of an aggravating factor be found by a jury, rather than a judge, in a death penalty case but noting that "'[i]t has never [been] suggested that jury sentencing is constitutionally required.'") (quoting Proffitt v. Florida, 428 U.S. 242, 252 (1976)); Turner v. State, 924 So. 2d 737, 785 (Ala. Crim. App. 2002) ("the Supreme Court's decision in Ring did not invalidate Alabama's law that vests the ultimate sentence determination in the hands of the trial judge and not a jury.").

Second, as to petitioner's argument that his trial counsel should have objected when the trial judge relied on the non-fatal injuries of Dee Ann Duncan in finding the "heinous, atrocious, or cruel" aggravating circumstance, the record shows, as the state appellate courts found, that the sentencing judge did not rely on that evidence in deciding to override the jury's recommendation and sentence petitioner to death.  The record shows that Judge Jack W. Meigs presided over petitioner's resentencing in 1992 and sentenced petitioner to death after the jury recommended life imprisonment without parole.  (Doc. 10, Vol. 16 at 3074-77).  Judge Meigs found three aggravating circumstances to exist, including the "heinous, atrocious, or cruel" aggravating circumstance.[6]  (Id.).  Petitioner's death sentence was affirmed by the Alabama Supreme Court in

_____

[6] Judge Meigs found that petitioner met the aggravating circumstances of Alabama Code § 13A-5-49(2): he was previously convicted of a felony involving the use or threat of violence to another person, i.e., child abuse; Alabama Code § 13A-5-49(3): petitioner knowingly created a great risk of death to many persons; and Alabama Code § 13A-5-49(8): the capital offense was especially heinous, atrocious, and cruel as compared to other capital offenses.  (Doc. 10, Vol. 16 at 3075).

Ex parte McGahee, 632 So. 2d 981 (Ala. 1993), in which the court held:

> McGahee next asserts that the trial court relied upon
> improper evidence in finding, as an aggravating circumstance, that
> the crime was especially "heinous, atrocious or cruel," Ala. Code
> 1975, § 13A-5-49(8).  McGahee contends that the trial court's
> finding was based largely on the testimony of Dee Ann Duncan,
> who was also present in the classroom and who witnessed the
> double murder.  After shooting and beating Brown and Lee,
> McGahee turned to Duncan and beat her.  He cites this Court's
> holding in Ex parte Kyzer, 399 So. 2d 330 (Ala. 1981), where we
> adopted a limiting construction that restricts this aggravating
> circumstance to homicides that are "unnecessarily torturous to the
> victim."  Ex parte Kyzer, at 334.  McGahee argues that the trial
> court's mentioning of Duncan's beating in its order indicates that it
> considered Duncan's injuries in determining whether the
> aggravating circumstance was present.
>
> Again, the record indicates that McGahee did not preserve
> this issue. Nonetheless, we have considered that issue, and we find
> no error.
>
> At the 1991 sentencing hearing, the State contended there
> were three aggravating circumstances: that McGahee had been
> previously convicted of a violent felony (Ala. Code 1975, § 13A-5-
> 49(2)); that he had knowingly created a great risk of death to many
> persons (§ 13A-5-49(3)); and that the offense was "especially
> heinous, atrocious or cruel" (§ 13A-5-49(8)).
>
> We must conclude that the trial court correctly followed
> Kyzer, because the evidence tends to show that McGahee's crime
> was "unnecessarily torturous" under the Kyzer standard.  McGahee
> shot Lee five times and shot, strangled, beat, and kicked Brown
> while she pleaded for her life.  A pathologist testified that Brown
> sustained injuries similar to those associated with being run over by
> an automobile.  The trial court's order, while mentioning Dee Ann

---

After Judge Meigs sentenced petitioner in this case, the Supreme Court decided Ring v. Arizona, 536 U.S. 584, 609 (2002), holding that the jury, not the trial judge, must determine the existence, *vel non*, of aggravating factors.  Ring, however, is not retroactive to cases that were already final on direct review at the time of that decision in 2002.  Schiro v. Summerlin, 542 U.S. 348, 358 (2004).  Petitioner's case was final on direct review in 1995 and, thus, is unaffected by Ring.  (Doc. 1 at 6).

Duncan's injuries, merely refers to them as it lists McGahee's actions:

> "The circumstance under Section 13A-5-49(8) does
> exist.  This capital offense was especially heinous,
> atrocious and cruel as compared to other capital
> offenses.  The defendant's actions were not limited
> to just the killing of two innocent people.  His
> actions were designed to embarrass and humiliate
> Connie Brown. He not only shot her twice, he
> viciously pistol-whipped [her] about the head.  The
> beatings were with such force that the hammer of the
> pistol broke off and the jagged edge gouged her face
> and head as he administered the beating.  He
> removed her clothing and attempted to sexually
> abuse her.  His beatings continued as he beat her in
> the chest and stomped her head with such force that
> her skull was fractured from ear to ear.  He then
> turned his attention to Dee Ann Duncan, rubbing her
> between the legs and pistol-whipping her in the head
> causing serious physical injury to her."
>
> There is no indication that the trial court relied on improper
> evidence in holding that McGahee's actions were especially
> heinous, atrocious, and cruel, as compared to other capital offenses.

McGahee, 632 So. 2d at 983-84.

In 2001, after petitioner's resentencing had been affirmed by the Alabama Supreme Court,

Judge Meigs presided over petitioner's Rule 32 proceedings and denied petitioner's petition for

Rule 32 relief.  (Doc. 10, Vol. 25 at 4951).  In addressing petitioner's Rule 32 claim that his trial

counsel was ineffective for failing to object to the trial court's improper consideration of Dee Ann

Duncan's injuries in finding the heinous, atrocious, or cruel aggravating circumstance, Judge

Meigs stated: "[t]his Court did not consider the injuries to Dee Ann Duncan when it found that

this crime was heinous, atrocious, or cruel.  . . .  This claim is denied."  (Doc. 10, Vol. 25 at

4939).  As quoted above, on appeal of the denial of petitioner's Rule 32 petition, the Alabama

Court of Criminal Appeals likewise found, as the Alabama Supreme Court had earlier found on direct appeal, that Judge Meigs had not relied on Dee Ann Duncan's injuries in finding the "heinous, atrocious, or cruel" aggravating circumstance. (Doc. 10, Vol. 53 at 10547-48). The record fully supports that finding, as it supports the finding of the "heinous, atrocious, or cruel" aggravating circumstance itself.

Last, petitioner argues that his crimes were not "heinous, atrocious, or cruel," but, rather, the trial judge improperly equated petitioner's desire to "embarrass or humiliate" Connie Brown with that aggravating circumstance. (Doc. 31 at 116). The Court disagrees. Petitioner testified at his second sentencing hearing that, after he shot Cassandra Lee (five times) and Connie Brown (two times), he threw Connie Brown to the floor, dragged her, beat her, stomped her, and kicked her to the point that "[t]here wasn't anything else [he] could possibly do" to her. In addition, petitioner stripped Ms. Brown naked because he "wanted to disgrace her." He wanted "to show her nakedness to the world." (Doc. 10, Vol. 12 at 2327-29). Dee Ann Duncan testified that, as she lay on an overturned desk in the classroom pretending to be dead, she watched petitioner kick and beat a naked Connie Brown, telling her to "get up bitch," that "she made his dick hard," and to "give it to him like she used to." (Doc. 10, Vol. 5 at 827). Moreover, while the attacks were in progress, an instructor at the school and a dean of the school opened the door of the classroom, and the instructor pleaded, "[w]ould you let me come in and see if I can help those that are hurt?" (Doc. 10, Vol. 3 at 544). Petitioner responded, "[n]o one's hurt. Everything's fine. Y'all go on." (Id. at 544). Petitioner got up and barricaded each of the doors to the classroom and returned to his attacks. (Id. at 540-45). The record shows that the assault against Connie Brown was prolonged, brutal, and designed to inflict the maximum damage to her, both physically and

38

psychologically.  Petitioner pounded Ms. Brown's naked body into the classroom floor, disregarding the pleas of those who sought to help her.  Petitioner's response was to barricade the doors so that he could not be interrupted again.

In Alabama, there are three factors generally recognized as indicating that a capital offense is especially heinous, atrocious, or cruel: "(1) the infliction on the victim of physical violence beyond that necessary or sufficient to cause death; (2) appreciable suffering by the victim after the assault that ultimately resulted in death; and (3) the infliction of psychological torture on the victim."  Brooks v. State, 2007 WL 625020, *31 (Ala. Crim. App. 2007) (citing Norris v. State, 793 So. 2d 847 (Ala. Crim. App. 1999)).  Evidence that petitioner's actions in this case were designed to embarrass and humiliate his victim supports the trial court's finding of the heinous, atrocious, or cruel aggravating circumstance under the factor, "infliction of psychological torture on the victim."  Furthermore, the evidence in this case, as recited above, supports the trial court's finding of the heinous, atrocious, or cruel aggravating circumstance under the other two factors discussed in Brooks and Norris, *i.e.*, the infliction of physical violence beyond that necessary to cause death and appreciable suffering by the victim after the assault that ultimately resulted in death.[7]

Therefore, contrary to petitioner's claim, trial counsel was not deficient for failing to object to the trial court's override of the jury's recommendation of life in prison.  Moreover, even if trial counsel had objected to the trial court's override of the jury's recommendation, petitioner

---

[7] It should also be noted that the trial court's finding as to the two other aggravating circumstances, *i.e.*, that petitioner previously had been convicted of a felony involving the use or threat of violence to another person and had knowingly created a great risk of death to many persons, would further support the trial court's override of the jury's recommendation of life imprisonment.

has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 13, is without merit.

With respect to habeas claim 14, petitioner claims that his trial counsel was ineffective for failing to object to the trial court's improper application of the heinous, atrocious, or cruel aggravating circumstance. (Doc. 1 at 30). For the reasons set forth above in relation to habeas claim 13, the Court finds that trial counsel was not ineffective for failing to object to the trial court's application of the heinous, atrocious, or cruel aggravating circumstance. Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 14, is without merit.

With respect to habeas claim 15, petitioner claims that his trial counsel was ineffective during the guilt phase for arguing a defense that was legally and factually unsupported, *i.e.*, that Cassandra Lee died as a result of her refusal to accept blood transfusions on the basis of her religious beliefs. (Doc. 1 at 30). Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that trial counsel was ineffective for pursuing a defense that he says was legally unsupported. Specifically, he claims that defense counsel's assertion in opening and closing arguments that Cassandra Lee died as a result of her refusal to accept blood transfusions was unsupported by the facts and the law, because the evidence established that McGahee shot Lee. The trial court held that defense counsel's decision to put forth this defense was a reasonable strategy under the circumstances and that McGahee had failed to prove that he was prejudiced by counsel's actions. We agree.

At the Rule 32 hearing, when asked why he attempted to prove that Cassandra Lee had died as a result of her refusal to accept blood transfusions, defense counsel testified that he was attempting to gain as much sympathy for McGahee as he could possibly get. He stated that one never knows what evidence a jury relies on, and that because the evidence against McGahee was so overwhelming and there was little else to put forth on his behalf, counsel decided to pursue this particular defense. Defense counsel testified that he wanted to present an insanity defense, too, but that he did not know until after the trial began whether his expert's testimony would support that defense. The trial court noted that defense counsel was an experienced criminal attorney who had tried hundreds of felony jury trials. The court found that, based on defense counsel's testimony, the decision to pursue an intervening-cause-of-death defense was a reasonable strategic decision in this case. The trial court further determined that McGahee had failed to establish that he was prejudiced by counsel's performance.

Alabama courts have reached the same decision under nearly identical circumstances. In Ex parte Duren, 590 So. 2d 369 (Ala. 1991), the Alabama Supreme Court considered defense counsel's decision to put forth a legally invalid defense based on the doctrine of transferred intent. The Supreme Court rejected Duren's claim that trial counsel rendered ineffective assistance when he relied on the doctrine of transferred intent, even though the trial court instructed the jury on the invalidity of the transferred-intent defense. That Court quoted from the trial court's findings regarding defense counsel's putting forth the defense because the evidence against Duren was overwhelming, and because a verdict based on the defense would have benefitted Duren. The Court then stated:

> "We agree with the trial court that [defense counsel's] decision was not unreasonable under all the [attendant] circumstances; consequently, we agree that Duren has not shown that counsel was ineffective in this regard. He was trying to make the most of a bad situation for his client."

> Ex parte Duren, 590 So. 2d at 373.

The Court also determined that Duren had failed to establish the prejudice prong of the Strickland test:

> "We cannot say that [defense counsel] was

41

> unreasonable in choosing to handle Duren's trial in
> the way he did.  We certainly cannot say that there is
> a reasonable probability that the result of the trial
> would have been different had [counsel] presented a
> defense other than the one he chose to present.
> Therefore, we hold that Duren did not receive
> ineffective assistance of counsel at his trial."

> Ex parte Duren, 590 So. 2d at 374.

> Based on the circumstances presented here, and in reliance
> on the Alabama Supreme Court's decision in Ex parte Duren, we
> affirm the trial court's denial of McGahee's claim for relief.

(Doc. 10, Vol. 53 at 10498-10501).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to

establish that his trial counsel was ineffective for relying on the defense that Cassandra Lee died

from an intervening cause, that being, her refusal to accept blood transfusions.  At petitioner's

trial, Ms. Lee's attending physician, Dr. Samuel Moseley, testified that the hospital sought, and

received, a court order stating that Ms. Lee had been advised by her physicians that "without

receipt of blood and blood components" the chances of her death or demise would be

"substantially increased."  In that order, the court found that Ms. Lee was mentally and physically

competent to refuse blood products, which she did.  (Doc. 10, Vol. 4 at 734-35).  It was Dr.

Moseley's opinion that the receipt of blood would have increased Ms. Lee's chances of getting

well.  (Id. at 730).

In addition, as the state court found, petitioner's trial counsel had few options in terms of

defense strategies.  The record shows that the police arrived on campus while petitioner's attacks

on the victims were still in progress.  (Doc. 10, Vol. 3 at 570-71).  Officer Truett McGee ordered

42

petitioner to throw out his gun and come out of the classroom with his hands raised.  (Id.).

Officer McGee heard one more shot, and then petitioner exited the classroom, covered in blood.

(Id. at 571; Vol. 4 at 635; Vol. 5 at 806-07).  Petitioner was placed under arrest, given his

Miranda rights, and put into a patrol car.  (Doc. 10, Vol. 5 at 804-07).  In route to the police

station, petitioner told the transporting officer, "if the bitch don't die, it's not because I didn't try.

I gave her a free ticket to heaven."  (Id. at 808).  Upon arrival at the police station, petitioner

volunteered, "the bitch wouldn't leave school, so I started busting caps."  (Id. at 809; Vol. 4 at

696-97).

      Given the overwhelming evidence against petitioner, the Court agrees with the state court

that petitioner's trial counsel was not ineffective for relying on an "intervening-cause-of-death"

defense.  Moreover, even if trial counsel had not asserted this defense, petitioner has not shown

that there is "a reasonable probability that . . . the result of the proceeding would have been

different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of

counsel, as alleged in habeas claim 15, is without merit.

      With respect to habeas claim 16, petitioner claims that his trial counsel was ineffective for

presenting evidence of petitioner's prior arrests for driving under the influence, driving without a

license, reckless endangerment, and disorderly conduct and a felony conviction for child abuse.

(Doc. 1 at 31).  Petitioner presented this same argument to the Alabama Court of Criminal

Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial

court's denial of relief, the court stated:

            McGahee next argues that the trial court erred when it
      denied his claim that trial counsel was ineffective for presenting
      evidence of McGahee's prior arrests and convictions. . . .  The trial

43

court denied the claims, noting that defense counsel testified at the
Rule 32 hearing that he presented evidence of the prior convictions
during his direct examination of McGahee in order to demonstrate
the stressors McGahee experienced and also to lessen the impact of
evidence by giving McGahee an opportunity to explain it to the
jury.  This was a strategic decision properly left to defense
counsel's determination.  We find no abuse of discretion in the trial
court's denial of this claim of ineffective assistance.

(Doc. 10, Vol. 53 at 10524-25).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to

establish that his trial counsel was ineffective for presenting evidence of petitioner's prior arrests

for driving under the influence in 1983, driving without a license in 1985, reckless endangerment

and disorderly conduct, and a felony conviction for child abuse in 1984.  (Doc. 1 at 31; Doc. 10,

Vol. 16 at 3088; Doc. 31 at 98).  As the state court found, petitioner's trial counsel testified at the

Rule 32 hearing that he believed the evidence would be admitted anyway, and he presented it

himself in an effort to "soften and minimize" its effect and give petitioner an opportunity to "give

his side of it."  (Doc. 10, Vol. 26 at 5018-19).  He also hoped to gain sympathy for petitioner by

showing the stress that he was under when he committed the murders in 1985.  (Id.).  Indeed, part

of trial counsel's defense strategy was that petitioner had suffered a mental breakdown as a result

of the deterioration of his life leading up to the murders.  (Doc. 10, Vol. 15 at 3001; Vol. 16 at

3002-15).  Under the circumstances, petitioner has failed to show that trial counsel's strategy was

unreasonable.  Moreover, even if the evidence of petitioner's prior arrests and felony conviction

had not been presented by defense counsel, petitioner has not shown that there is "a reasonable

probability that . . . the result of the proceeding would have been different."  Strickland, 466 U.S.

at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim

16, is without merit.

With respect to habeas claim 17, petitioner claims that his trial counsel was ineffective for informing the jury during his resentencing that he had been incarcerated on death row.  (Doc. 1 at 31).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues next that trial counsel was ineffective for informing the jury that he had been incarcerated on death row.  He argues, as he did in the lower court, that if the information had not been disclosed, the jury would have likely returned a unanimous recommendation that McGahee be sentenced to life imprisonment without parole.  He further states that this unanimous recommendation would have led the trial court to impose the life-without-parole sentence.  The Rule 32 court rejected this claim, finding that McGahee presented no evidence in support of it, and further finding that McGahee failed to establish any prejudice.  We agree.
>
> First, we note that, in a previous argument in this issue, McGahee urged this Court to find that trial counsel's performance was deficient and that McGahee was prejudiced because counsel *did not* introduce documents from Holman Prison that would have established that McGahee was a model prisoner on death row.  For appellate counsel to now argue that trial counsel was ineffective for introducing testimony from a prison guard that McGahee experienced a religious conversion while incarcerated on death row is wholly inconsistent with the earlier claim of error.  Counsel cannot, in good faith, rely on both sides of the same argument.
>
> Second, we agree with the trial court that McGahee failed to establish either deficient performance or prejudice.  Evidence from the prison guard about McGahee's apparently sincere practice of his religion was offered as mitigation, and the trial court found it to be a mitigating circumstance.  McGahee failed to prove that, absent evidence that he had been on death row, the jury would have unanimously recommended that he receive a life-without-parole sentence.  Furthermore, the court stated in its order denying relief

45

on this claim that its sentencing decision was not influenced by the fact that McGahee had been incarcerated on death row.

Because the trial court did not abuse its discretion when it denied relief on this claim, we affirm the court's decision.

(Doc. 10, Vol. 53 at 10541-43) (emphasis in original).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for informing the jury at resentencing that petitioner had been incarcerated on death row. As the state court found, the resentencing jury was aware of petitioner's status as a death row inmate from trial counsel's presentation of mitigating evidence, through a death row prison guard, that petitioner had been a religious, model prisoner on death row. (Doc. 10, Vol. 13 at 2493-98). In the balance, trial counsel's decision to present this evidence was not an unreasonable one, even considering the fact that the jury learned that petitioner was incarcerated on death row. Moreover, Judge Jack W. Meigs, who presided over petitioner's resentencing proceedings and subsequent Rule 32 proceedings, stated in his memorandum opinion denying Rule 32 relief on this claim that petitioner's status as a death row inmate had no effect on his decision to impose the death penalty. Judge Meigs stated:

McGahee cannot prove that he was prejudiced by this allegedly deficient performance. The resentencing jury recommended a life without parole sentence by a 10-to-2 vote even though Mr. Boynton informed them that McGahee had been on death row. McGahee has not presented any evidence that either of the two jurors who voted for death would have changed their vote had Mr. Boynton not made this argument. Further this Court's decision was not influenced by this argument. This claim is without merit.

(Doc. 10, Vol. 25 at 4937). Therefore, even if trial counsel had not informed the resentencing

46

jury that petitioner had been incarcerated on death row, petitioner has not shown that there is "a

reasonable probability that . . . the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  Thus, petitioner's claim of ineffective assistance of counsel, as

alleged in habeas claim 17, is without merit.

With respect to habeas claim 18, petitioner claims that his trial counsel was ineffective for

failing to object to or restrict testimony concerning petitioner's assault on Dee Ann Duncan and

the injuries she suffered as a result of that attack.  (Doc. 1 at 32).  Petitioner presented this same

argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its

memorandum opinion affirming the trial court's denial of relief, the court stated:

> The next claim McGahee raises is that trial counsel was
> ineffective for failing to restrict what he claims was the irrelevant
> testimony of Dee Ann Duncan.  The trial court denied the claim
> because McGahee failed to present any evidence in support of it
> and because the testimony was properly admitted as part of the *res
> gestae* of the crime.  We agree with the trial court.
>
> Dee Ann Duncan testified at trial about McGahee's actions
> on the day of the shooting.  As part of this testimony about the
> events, Duncan testified that McGahee came to the place in the
> classroom where she had fallen and he rubbed between her legs; he
> also struck her with a gun and his fists until she lost consciousness.
> McGahee's assault on Duncan was part of the single criminal
> transaction in this case, and her testimony was therefore admissible.
> E.g., Hall v. State, 820 So. 2d 113, 134 (Ala. Crim. App.1999),
> aff'd, 820 So. 2d 152 (Ala. 2001).  Trial counsel had no grounds on
> which to object to Duncan's testimony.  McGahee presented no
> evidence on this issue at the Rule 32 hearing, so he failed to prove
> that counsel's performance was deficient or that he was prejudiced
> in any way.  The trial court correctly denied relief on this claim.

(Doc. 10, Vol. 53 at 10526-27).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to

establish that his trial counsel was ineffective for failing to object to testimony concerning his

assault on Dee Ann Duncan.  As the state court found, Ms. Duncan was one of the victims of

petitioner's classroom rampage and an eyewitness to petitioner's attacks on Connie Brown and

Cassandra Lee.  (Doc. 10, Vol. 5 at 818-30).  Petitioner fondled Ms. Duncan and severely beat

her, causing her to suffer permanent injuries from his attack.  (Id.).  Notwithstanding petitioner's

argument that he was not on trial for his attack on Ms. Duncan, Ms. Duncan's eyewitness

testimony about what she saw, heard, and experienced in the classroom was admissible, and trial

counsel was not deficient for failing to object to that evidence.  See Hall v. State, 820 So. 2d 113,

134 (Ala. Crim. App. 1999) ("The rule has been stated many times by the appellate courts of this

State that in a prosecution for homicide, evidence of connected acts and transactions leading up to

and explanatory of the killing is admissible.").  Moreover, even if trial counsel had persuaded the

trial court to restrict testimony concerning petitioner's attack on Ms. Duncan, as urged by

petitioner, petitioner has not shown that there is not "a reasonable probability that . . . the result of

the proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim

of ineffective assistance of counsel, as alleged in habeas claim 18, is without merit.

     With respect to habeas claim 19, petitioner claims that his trial counsel was ineffective for

failing to cross-examine Dee Ann Duncan on the issue of whether petitioner had sexually abused

any of his victims.  (Doc. 1 at 32).  Petitioner presented this same argument to the Alabama Court

of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming

the trial court's denial of relief, the court stated:

> McGahee argues that the trial court erred when it denied
> relief on his claim that trial counsel was ineffective for failing to

48

cross-examine Dee Ann Duncan because, he says, effective cross-examination would have established that he had not sexually abused any of the victims.  The trial court held that McGahee had failed to present any evidence to support this claim.  We agree.  At the Rule 32 hearing, McGahee did not question counsel about the decision to forgo cross-examination of Duncan.  Furthermore, he did not offer any evidence from Duncan, so he failed to establish that cross-examination of Duncan at trial would have shown that McGahee had not sexually abused the victims.  The trial court did not abuse its discretion when it denied this claim.

(Doc. 10, Vol. 53 at 10519).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that petitioner failed to establish that his trial counsel was ineffective for failing to cross-examine Dee Ann Duncan on the issue of whether petitioner had sexually abused any of his victims.  Prior to Ms. Duncan testifying at trial, Ferrin Eiland, an instructor at the college, testified that he looked into the classroom during the attack and saw Connie Brown naked on the floor with her legs "propped up with the knees bent and somewhat parted."  He saw petitioner "kneeling in between her legs."  (Doc. 10, Vol. 3 at 525-26).  Mr. Eiland watched petitioner raise his fist and strike Ms. Brown twice in the chest.  (Id. at 527-28).  He then ran to go and telephone for help.  (Id. at 530).  Ms. Duncan, who survived petitioner's attack, testified that, while she lay on an overturned desk pretending to be dead, she looked up and saw Connie Brown lying naked on the floor.  She heard petitioner tell her to "give it to him like she had used to," that "she made his dick hard."  (Doc. 10, Vol. 5 at 827).  Ms. Duncan closed her eyes at that point because she thought that petitioner was going to rape Ms. Brown.  (Id.).  Ms. Duncan testified that petitioner subsequently came over to her and began rubbing between her legs with his hand.  Then he struck her in the head with his pistol and beat her with his fists until she lost consciousness.  (Id. at 828).  Petitioner argues that trial counsel was ineffective because he did not attempt to show, through

49

Ms. Duncan, that petitioner's conduct on that day was not sexual in nature.  However, petitioner's argument ignores the evidence, just recited, that his conduct was sexual in nature, and it ignores the risk that trial counsel faced of alienating the jury if he challenged Ms. Duncan on that issue, as well as the risk that trial counsel faced of reinforcing Ms. Duncan's testimony related to petitioner's graphic, sexual behavior.  Under the circumstances, the Court is not convinced that it was unreasonable for trial counsel to forego this cross-examination.  Moreover, even if trial counsel had cross-examined Dee Ann Duncan about the sexual nature of petitioner's conduct, as urged by petitioner, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 19, is without merit.

With respect to habeas claim 20, petitioner claims that his trial counsel was ineffective for failing to challenge the qualifications of two of the State's experts, a serologist who testified regarding the issue of sexual abuse and a witness who testified as a expert in critical hospital care procedure.  (Doc. 31 at 100).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee argues that trial counsel was ineffective for failing to challenge the qualifications of two of the State's witnesses who testified as experts.  The trial court denied this claim, finding that McGahee failed to present any evidence to support it.  We agree. Although trial counsel testified at the Rule 32 hearing, he was not questioned about his decision to accept the witnesses' qualifications.  There being no evidence before the trial court to support this bare allegation, the claim was correctly denied. McGahee is not entitled to any relief on this claim.

(Doc. 10, Vol. 53 at 10516-17).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to challenge the qualifications of these two State's experts.  Petitioner refers to William H. Landrum, who was employed by the State of Alabama Department of Forensic Sciences as a forensic serologist.  Mr. Landrum described a forensic serologist as "a person trained in the scientific examination and analyses of biological fluids, sem[e]n, and saliva."  (Doc. 10, Vol. 4 at 633).  Mr. Landrum testified that he did not find any evidence of ejaculation in samples taken from Ms. Brown's body, which did not mean that a rape had not occurred, but only that the perpetrator had not ejaculated.  (Id. at 634-36).  The second witness, Patricia Rogers, was employed at the Selma Medical Center as the Director of the Critical Care Unit, the Intensive Care Unit, the Emergency Room, and the Medical Care Units.  (Id. at 639, 657-58).  Ms. Rogers was a registered nurse and had been certified in emergency medicine for advanced cardiac life support for adults.  (Id. at 639).  The State offered Ms. Rogers as an expert in the fields of critical care, the treatment of gunshot wounds, and emergency room and intensive care unit treatment.  (Id.).  Ms. Rogers' testimony related primarily to the treatment of Cassandra Lee during the ten days that she remained in the hospital before she died.  (Id. at 671).  In his petition, petitioner fails to specify which opinions Mr. Landrum or Ms. Rogers should not have been allowed to render and how each witness's qualifications were lacking *vis-a-vis* those opinions.  Thus, petitioner has failed to show how trial counsel was deficient for failing to object to the qualifications of these two experts.  Moreover, even if trial counsel had challenged the qualifications of these witnesses and had prevented their testimony *in toto*,

petitioner has not shown that there is "a reasonable probability that . . . the result of the

proceeding would have been different." Strickland, 466 U.S. at  694.  Thus, petitioner's claim of

ineffective assistance of counsel, as alleged in habeas claim 20, is without merit.

With respect to habeas claim 21, petitioner claims that his trial counsel was ineffective for

failing to file a motion requiring the State to show that probable cause or exigent circumstances

existed allowing the police to seize a blood sample from petitioner upon his arrest.  (Doc. 1 at 33).

Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his

Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief,

the court stated:

> McGahee argues that trial counsel rendered ineffective
> assistance because he failed to file a motion requiring the State to
> demonstrate the existence of probable cause or exigent
> circumstances justifying seizure of a blood sample from McGahee.
> He claims that had counsel objected, the evidence would have been
> excluded and the State's case would have been substantially
> weaker.  The trial court denied the claim, finding that McGahee
> presented no evidence on the claim at the Rule 32 hearing and that
> he failed to overcome the presumption that trial counsel acted
> reasonably.  The court further noted that McGahee had failed to cite
> a page from the trial transcript demonstrating that the evidence
> was admitted at trial.  We agree with the trial court's findings.  Nothing
> in the record before us indicates that trial counsel's performance
> was deficient or that McGahee suffered any prejudice.  The trial
> court did not abuse its discretion when it denied this claim.

(Doc. 10, Vol. 53 at 10525-26).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to

establish that his trial counsel was ineffective for failing to challenge the existence of probable

cause or exigent circumstances allowing the police to seize petitioner's blood upon his arrest.  As

in the state court, petitioner has failed to demonstrate to this Court that evidence of a blood sample seized from him upon arrest was admitted at trial.  However, assuming that such evidence was admitted, the record does not support petitioner's claim that his trial counsel was deficient for failing to challenge this evidence of the basis of lack of probable cause.  The record shows that, when the police arrived at the scene, petitioner was still in the process of attacking his three victims.  (Doc. 10, Vol. 3 at 569-71).  When Officer Truett McGee attempted to enter the classroom where the women were being held, petitioner pointed a gun at his head, forcing him to retreat.  (Id.).  Officer McGee ordered petitioner to throw out his gun and come out with his hands raised. (Id.).  Petitioner complied with the order and exited the room, his clothes covered in blood. Inside the classroom, police officers found the three victims lying in blood.  The floor, walls, and doors of the classroom were stained with blood.  (Id. at 572-73, 582-84, 596-99; Vol. 4 at 602-05, 635; Vol. 5 at 806-07, 828).  After having been read his rights, petitioner told police officers attempting to photograph him at the scene, "yeah, it's me, mother fucker."  (Doc. 10, Vol. 5 at 806-07).  Given this evidence, trial counsel was not deficient for failing to challenge the existence of probable cause for seizing blood from petitioner upon his arrest.  Moreover, even if trial counsel had challenged the seizure of the blood sample, as urged by petitioner, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 21, is without merit.

With respect to habeas claim 22, petitioner claims that his trial counsel was ineffective for calling petitioner to testify during the guilt phase of his trial.  (Doc. 1 at 34).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings,

and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee next argues that trial counsel was "grossly ineffective" because he presented McGahee as a witness during the guilt phase of trial. Specifically, McGahee argues that his testimony was incriminating and directly harmful to his case. The trial court rejected the claim, finding that trial counsel had consulted with McGahee and had made a strategic decision to put McGahee on the stand in an attempt to elicit sympathy from the jury and to give him the opportunity to explain to the jury the stressors he was under at the time of the offense. McGahee appeals from the trial court's denial of this claim for relief.
>
> Trial counsel testified at the Rule 32 hearing that, after talking to McGahee, he decided as a matter of trial strategy that McGahee should testify at trial. He thought McGahee's testimony would make a difference, and he also hoped McGahee would elicit some sympathy from the jury. Trial counsel discussed with McGahee the general areas he intended to cover during the testimony, and he explained what he wanted from McGahee in his testimony. Counsel stated that McGahee was hostile on the witness stand and that McGahee's attitude surprised him. Finally, defense counsel testified that he questioned McGahee about a prior conviction to minimize its prejudicial effect and to present it as part of the stress McGahee was under before he committed the crime.
>
> Based on our review of the record, we cannot find that the trial court abused its discretion when it denied relief on this claim. The only evidence presented at the Rule 32 hearing indicates that defense counsel made a strategic decision to put McGahee on the stand; this decision was based on his appraisal of the case and on his discussions with McGahee about the questions he would ask McGahee. The record supports a finding of neither deficient performance or prejudice. Hallford v. State, 629 So. 2d 6 (Ala. Crim. App. 1992). Trial counsel was faced with the daunting task of representing a defendant who had, arguably, insurmountable evidence against him. Particularly in cases such as this one, in the absence of evidence that the decision was anything other than a reasonable defense strategy based on the circumstances of the case, we defer to counsel's strategic decisions. We affirm the trial court's denial of this claim.

(Doc. 10, Vol. 53 at 10517-19).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that trial counsel was ineffective for calling petitioner to testify during the guilt phase of his trial.  As the state court found, trial counsel was faced with "arguably insurmountable" evidence against petitioner and had very little evidence to present in defense.  Counsel made a strategic decision to put petitioner on the stand to show how stress had caused him to suffer a mental breakdown.  Trial counsel hoped to prove his insanity theory and develop some sympathy for petitioner.  (Doc. 10, Vol. 26 at 5005-11, 5017-19).  Given the enormity of the task faced by trial counsel and the limited options available to him, the Court is not convinced that trial counsel was deficient for calling petitioner to testify.  Moreover, even if trial counsel had not called petitioner to testify during the guilt phase of his trial, as petitioner urges, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 22, is without merit.

With respect to habeas claim 23, petitioner claims that his trial counsel was ineffective for failing to challenge the admissibility of certain un-Mirandized statements made by petitioner after his arrest.  (Doc. 1 at 34).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> The next claim before us is whether trial counsel rendered ineffective assistance for failing to challenge the introduction of statements McGahee made before he was informed of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602 (1966).  McGahee asserts that, if counsel had objected properly to these statements, they would not have been introduced into evidence and he would not have been convicted or, in the

55

alternative, he would not have received the death sentence.  The trial court rejected this claim, finding that McGahee presented no evidence at the Rule 32 hearing to support this allegation of error. The trial court also held that trial counsel did challenge the admissibility of the statements; that McGahee had made some incriminating statements spontaneously before he was taken into custody; and that the prosecution had established that the <u>Miranda</u> rights were read to McGahee as soon as he taken into custody. The trial court's analysis and conclusions are correct.

     Outside the jury's presence, the trial court considered testimony to determine whether McGahee's statements were admissible.  The prosecution presented evidence indicating that, immediately after McGahee was taken into custody, his <u>Miranda</u> rights were read to him.  McGahee was not questioned at that time. While he was being transported to the police station from the junior college where the shooting occurred, McGahee volunteered the following statement: "Well, if the son of a bitch does live, it ain't my fault because I gave her a free ticket to heaven."  (TR. 649.) The police officer testified that McGahee made a similar statement while he was in the booking room of the station.  McGahee also stated that the situation had not worked out as he had planned, that "the bitch" would not leave the room, so he "started busting caps," and that if he had taken all of his ammunition into the classroom, the police would not have taken him alive.  (TR. 650.)  McGahee testified that the <u>Miranda</u> rights were not read to him at the scene or in the booking room.  He denied any knowledge of the statements that, according to the prosecution witness, he made spontaneously after he was taken into custody.  Defense counsel then argued that the statements should not be admitted because there had not been an adequate showing that McGahee had been informed of his <u>Miranda</u> rights in a timely manner and before he made any statements.  The trial court overruled the objection and allowed the statements into evidence.

     Clearly, defense counsel objected to the admission of the statements on the same ground raised by postconviction counsel, and presented McGahee's testimony in an attempt to support the suppression of the statements.  There is no testimony in the record before us indicating that counsel's performance was deficient in his attempts to exclude the statements, and McGahee has not demonstrated that he was prejudiced by counsel's efforts.  The trial court's denial of this claim is due to be affirmed.

(Doc. 10, Vol. 53 at 10514-16).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that trial counsel was ineffective for failing to object to certain statements made by petitioner after his arrest.  The record shows that, within three minutes of apprehending petitioner, police officers walked him from the classroom to a waiting police car, at which time a police officer read petitioner his <u>Miranda</u> rights.  Subsequently, but while still at the scene, petitioner made incriminating statements about the murders.  Petitioner also made incriminating statements in route to the police station and in the booking room at the police station.  (Doc. 10, Vol. 4 at 695-99).  At trial, trial counsel strenuously objected to the introduction of these statements.  (<u>Id.</u>, Vol. 4 at 693-711).  Therefore, trial counsel was not deficient, as alleged.  Moreover, even if the statements had been excluded at trial, as petitioner urges, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 23, is without merit.

With respect to habeas claim 24, petitioner claims that his trial counsel was ineffective for failing to request jury instructions on the lesser included offenses of reckless murder and manslaughter.  (Doc. 1 at 35).  Petitioner argues that the evidence supported a finding that petitioner shot Cassandra Lee while in an "intoxicated rage" against Connie Brown.  (<u>Id.</u>). Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee next argues that the lower court abused its discretion when it denied his claim that trial counsel was ineffective because he failed to request an instruction on intoxication and failed

57

to request lesser-included offense instructions based on his intoxication. We disagree. The trial court held that defense counsel was not deficient for failing to request the foregoing instructions because the record contained no evidence to support such instructions. As discussed in the previous section of this opinion, the officers who had contact with McGahee after the murders did not detect the odor of alcohol or believe McGahee was intoxicated. When he spoke to his attorney and to all of the mental health experts, McGahee consistently denied that he had consumed alcohol before the murders. When he testified at his second sentencing hearing, McGahee for the first time claimed that he was intoxicated on the day of the murder. Thus, at the guilt phase of McGahee's trial, no evidence had been presented that would have supported instructions on intoxication or on any lesser-included offense based on intoxication. Trial counsel's performance was not deficient, and McGahee suffered no prejudice. Therefore, McGahee was not entitled to any relief on this claim, and we affirm the trial court's judgment as to this issue.

(Doc. 10, Vol. 53 at 10497-98).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that trial counsel was ineffective for failing to request jury instructions on the lesser included offenses of reckless murder and manslaughter based on intoxication. The record from the guilt phase of petitioner's trial reveals no evidence that would have supported such charges. At trial, petitioner testified that he had consumed no alcohol on the day of the murders and had drunk only "a couple of beers" the night before. (Doc. 10, Vol. 6 at 1012). Therefore, trial counsel was not deficient for failing to request jury instructions on the lesser included offenses of reckless murder and manslaughter based on petitioner's alleged intoxication at the time of the murders. Moreover, even if trial counsel had requested the jury charges urged by petitioner, and the trial court had given the instructions, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S.

58

at 694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim

24, is without merit.

With respect to habeas claim 26, petitioner claims that his trial counsel was ineffective for

failing to object to numerous instances of prosecutorial misconduct.  (Doc. 1 at 36-37).  Petitioner

presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32

proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court

stated:

> McGahee next argues that trial counsel was ineffective
> because he failed to object to numerous instances of prosecutorial
> misconduct.  He claims that counsel should have objected and
> requested a curative instruction after the prosecutor informed the
> jury that McGahee was presumed guilty because an indictment had
> been issued against him; that counsel failed to adequately challenge
> the prosecution's exclusion of African-Americans and women from
> the jury venire; and that counsel failed to object to numerous guilt-
> phase arguments.  The trial court examined each of the allegations
> and found them to be meritless.  We have reviewed each of the
> instances of prosecutorial misconduct alleged by McGahee and we
> have reviewed the portions of the trial record relating to the claims
> raised.  We agree with the trial court that McGahee failed to
> establish deficient performance and prejudice as to each of the
> claims.  We adopt the trial court's findings and affirm the trial
> court's denial of these claims for relief.

(Doc. 10, Vol. 53 at 10501-02).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to

establish that trial counsel was ineffective for failing to object to numerous instances of

prosecutorial misconduct.  Petitioner claims, for example, that trial counsel was ineffective for

failing to request a curative instruction after the district attorney stated in front of the venire that

the "probability of guilt exists, otherwise there would be no indictment." (Doc. 10, Vol. 2 at 319). However, the record shows that the trial judge instructed the venire that "the Defendant is presumed to be innocent until he's proven guilty." (Id. at 318). Subsequently, at trial, the judge further instructed the jury:

> [T]he indictment in this case is not evidence and the fact that the Defendant has been indicted is not to be considered by you as a circumstance against him. The indictment is merely the method of placing this Defendant on trial. The Defendant, for his plea and in answer to this indictment, says he's not guilty. This places upon the prosecution the burden of proving his guilt to a moral certainty and beyond a reasonable doubt. The burden never rests upon the Defendant to establish his innocence nor to disprove the facts tending to establish his guilt.

(Doc. 10, Vol. 7 at 1221).

Petitioner also claims that trial counsel was ineffective for failing to object to numerous improper guilt phase arguments by the prosecutor, including instances in which the prosecutor injected his personal opinion into the case,[8] invoked unrelated prior criminal acts by petitioner (*i.e.* child abuse, reckless endangerment, and disorderly conduct), appealed to passion and prejudice to urge the jury to convict petitioner,[9] argued that it was the jury's duty to convict, and compared the rights of the victims with the rights of petitioner. Trial counsel testified at the Rule 32 hearing that his objection strategy at trial was to choose carefully the objections that he would make and object only to those things that were truly prejudicial to petitioner. (Doc. 10, Vol. 26 at

---

[8] Petitioner refers to statements by the prosecutor that he believed that the petitioner was guilty; that "[t]his is one of the most blatant acts of violence you'll ever see;" and that "I think that evidence fits in this case." (Doc. 1 at 50).

[9] Petitioner refers to a statement by the prosecutor that, "if you can't be safe in the classroom at school where some of your wives may be teachers or some of your children may be students, where can you be secure." (Doc. 1 at 52).

5014).  He did not want the jury to form a negative impression of him or petitioner from the trial

judge overruling his objections, nor did he want to alienate the jury by making needless

objections.  (Id. at 5014-15).  Moreover, the record shows that the trial judge instructed the jury

that nothing that was said by counsel for the State or for the defense was to be considered as

evidence in the case and that any statement or any arguments made by counsel which were not

supported by the evidence or by the law, as it had been given to them by the court, should be

disregarded.  (Doc. 10, Vol. 7 at 1244).  The Court has reviewed the record with regard to

petitioner's claims of ineffective assistance of trial counsel related to counsel's failure to object to

the foregoing instances of alleged prosecutorial misconduct, and the Court is satisfied that

counsel was not deficient in this regard.  However, assuming that trial counsel had objected to the

alleged instances of prosecutorial misconduct, as urged by petitioner, petitioner has not shown

that there is "a reasonable probability that . . . the result of the proceeding would have been

different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of

counsel, as alleged in habeas claim 26, is without merit.

        With respect to habeas claim 28, petitioner claims that his trial counsel was ineffective for

failing to object to the trial court's jury instructions related to "reasonable doubt," the burden of

proving insanity, the jury's consideration of sympathy, and petitioner's prior criminal behavior.

(Doc. 1 at 37-38).  Petitioner presented this same argument to the Alabama Court of Criminal

Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial

court's denial of relief, the court stated:

> McGahee next argues that the trial court erred in denying his
> claim alleging that counsel failed to object to improper jury
> instructions.  Specifically, he contends that the court's instruction
> on reasonable doubt was erroneous and objectionable; that the
> instruction on the burden of proof with regard to insanity was

61

improper and should have been objected to; that counsel should
have objected to the trial court's repeated references to McGahee's
prior criminal behavior; and that counsel should have objected to
the court's instruction that the jury was not to consider sympathy
during its deliberations.  The trial court rejected McGahee's claims
and determined that counsel was not ineffective because the jury
instructions were proper and correct statements of the law.  We
have reviewed McGahee's claims and the trial court's instructions
to the jury.  We agree with the trial court that the jury instructions
were proper and that counsel was not ineffective for failing to
object to the instructions.  The trial court correctly denied this claim
for relief.

(Doc. 10, Vol. 53 at 10502-03).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to

establish that his trial counsel was ineffective for failing to object to the foregoing jury

instructions.  Petitioner asserts that the trial court's instructions related to "reasonable doubt"

were constitutionally defective because the trial judge included phrases such as proof of guilt "to

a moral certainty" and the jury having an "actual, substantial doubt" of guilt.  (Doc. 10, Vol. 7 at

1221-22).  Petitioner claims that these references could have been understood by the jurors to

mean a standard of proof less than "beyond a reasonable doubt."  However, a review of the entire

charge shows that the trial court correctly conveyed to the jury that petitioner was presumed

innocent, that the presumption of innocence attended petitioner throughout his trial, and that the

jury must be convinced from the evidence of defendant's guilt beyond a reasonable doubt.  Cf.

Victor v. Nebraska, 511 U.S. 1,  8-22 (1994) (the trial courts' instructions on reasonable doubt,

which contained references to "a moral certainty" and "an actual and substantial doubt," when

taken as a whole, correctly conveyed the concept of reasonable doubt to the jury.).  Petitioner also

claims that the trial court's instructions related to the burden of proof of insanity were

62

unconstitutional because the trial court stated that petitioner must prove insanity by a preponderance of the evidence and to the jury's "reasonable satisfaction."  (Doc. 10, Vol. 7 at 1222-26).  Allocation of the burden of proof of insanity to the defendant, by a preponderance of the evidence, is constitutional, see Medina v. California, 505 U.S. 437, 441-52 (1992), and the trial court's use of the phrase, "to [the jury's] reasonable satisfaction," does not render it unconstitutional.  Cowley v. Stricklin, 929 F.2d 640, 645 (11th Cir. 1991) ("The burden upon the defendant is to establish the issue of legal insanity by a preponderance of the evidence and to the reasonable satisfaction of the jury.").  Finally, the Court has reviewed the remaining challenged instructions and has determined that they too were correct statements of the law.  (Doc. 10, Vol. 7 at 1219, *et. seq.*).  Therefore, trial counsel was not deficient for failing to object to the instructions.  Moreover, even if trial counsel had objected to the charges, as urged by petitioner, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 28, is without merit.

With respect to habeas claim 30, petitioner claims that his trial counsel was ineffective for failing to adequately seek a change of  venue.  (Doc. 1 at 39).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee next argues that the trial court erred when it denied him relief on his claim alleging that trial counsel rendered ineffective assistance when he failed to adequately present the motion for a change of venue.  Specifically, he argues that counsel failed proffer (sic) all available evidence to support a change of venue and failed to put forth any legal support for the motion.  The trial court rejected McGahee's postconviction claim, finding that trial counsel fully litigated the motion seeking a change of venue, presented several witnesses, and argued the merits of the motion.

63

The court further noted that counsel conducted extensive voir dire questioning of potential jurors to determine whether any of them had opinions regarding McGahee's guilt based on any pretrial publicity, and successfully challenged some of the jurors based on their responses. Finally, the trial court stated that a change of venue is not due to be granted merely because prospective jurors had heard about the case. To the contrary, the court stated, the relevant question is whether the community was saturated with prejudicial pretrial publicity or whether there existed actual prejudice against the defendant. We agree with the trial court's analysis and conclusion as to this claim.

On appeal, McGahee argues that trial counsel's presentation of "the anemic motion for a venue change" deprived him of a fair trial before impartial jurors. We have reviewed the trial record, including the exhibits submitted by defense counsel and the extensive hearing held on the motion for a change of venue. We have also reviewed the voir dire questioning of the prospective jurors and their responses to questions regarding pretrial publicity. We agree with the trial court's discussion of the legal principles as they apply to the facts of this case. Specifically, we note that the existence of widespread publicity does not require a change of venue. A defendant must establish actual prejudice or prove that the community was saturated with prejudicial publicity. Parris v. State, [Ms. CR-00-0406, Nov. 22, 2002] --- So. 2d ----, ---- (Ala. Crim. App.2001) (opinion on return to remand). We agree with the trial court that McGahee has failed to establish that trial counsel could have sustained this burden of proof, but failed to do so as a result of his deficient performance. Moreover, as the trial court correctly held, McGahee has failed to establish that he was prejudiced by counsel's performance. Therefore, we affirm the trial court's denial of this claim of error.

(Doc. 10, Vol. 53 at 10503-05).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective for failing to adequately seek a change of venue. The record shows that trial counsel filed a motion for a change of venue (Doc. 10, Vol. 8 at 1573-74) and zealously argued its merits during an extensive evidentiary hearing. (Id., Vol. 1 at 122-

64

196; Vol. 2 at 204-08).  Therefore, trial counsel was not deficient, as petitioner alleges, for failing to adequately seek a change of venue.  Moreover, even if trial counsel had been successful in obtaining a change of venue, petitioner has not shown that there is "a reasonable probability that . . . the result of the proceeding would have been different."  Strickland, 466 U.S. at  694.  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 30, is without merit.

With respect to habeas claim 31, petitioner claims that his trial counsel was ineffective in the following respects: (a) during jury selection, trial counsel failed to adequately object to the trial court granting the State's motion to remove some venire members for cause based upon their expressed opposition to imposing the death penalty, and trial counsel failed to ensure that two other venire members, jurors M.C. and H.O., were removed for cause after M.C. stated a belief that petitioner was guilty, and H.O. stated that he was related to people working in the district attorney's office; and (b) at petitioner's resentencing, trial counsel allowed voir dire of the venire to begin without petitioner being present in the courtroom.  (Doc. 1 at 40-41, 57-58, 69-71).  Petitioner presented these same arguments to the Alabama Court of Criminal Appeals during his Rule 32 proceedings, and, in its memorandum opinion affirming the trial court's denial of relief, the court stated:

> McGahee next argues that trial counsel rendered ineffective assistance when he failed to "adequately object" when the trial court granted the State's motion to strike veniremembers from the jury based on their responses to questions regarding the death penalty.  The trial court denied this claim for relief, finding that counsel did, in fact, object on constitutional grounds to the court's removal of the prospective jurors from the panel.  The court further stated that the transcript of voir dire questioning established that the prospective jurors indicated that they were unalterably opposed to the imposition of the death penalty, which is a legitimate ground for

removing veniremembers from a jury panel.  Moreover, the court noted that McGahee received a new sentencing hearing with a new jury, and that McGahee could not establish any prejudice as to the penalty phase as a result of his attorney's actions as to the members of the first venire.  We agree with the trial court.

McGahee received a new sentencing hearing as a result of his direct appeal following his conviction and death sentence. Therefore, he cannot establish that he suffered any prejudice in the first sentencing hearing as a result of the trial court's actions regarding removal of veniremembers.  Furthermore, the record reflects that the veniremembers struck on the basis of their beliefs regarding the death penalty stated, often more than once, that they could not vote to impose the death penalty under any circumstances.  After the State moved to strike the veniremembers, defense counsel made an extensive argument in opposition to the motion, citing Witherspoon v. Illinois, 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed.2d 776 (1968).  When the trial court granted the State's motion to strike those veniremembers, defense counsel objected again.  The trial court then stated that each of the veniremembers struck had unequivocally said that he or she could not return a death-penalty verdict under any circumstances.

As the trial court correctly determined in its order denying postconviction relief, defense counsel adequately objected to the State's motion to strike the veniremembers, and the trial court properly granted the State's challenges for cause.  McGahee failed to establish deficient performance or prejudice.  Therefore, we affirm the trial court's denial of this claim for relief.

. . .

McGahee argues also that counsel was ineffective because, he says, counsel failed to adequately argue for the removal of several jurors for cause on grounds that the jurors were unfit to serve on his jury.  He contends that veniremember M.C. had a fixed opinion about his guilt and that veniremember H.O. was related to members of the district attorney's office and that he had been exposed to pretrial publicity.  The trial court denied the claim.  The court stated that M.C. indicated during voir dire questioning that she could follow the court's instructions and base her verdict only on the evidence presented at trial. The court further found that veniremember H.O. was the father-in-law of a county prosecutor who was not involved in McGahee's case.  The court concluded that the challenges for cause as to those veniremembers were correctly denied, and that McGahee had failed to establish deficient

66

performance or prejudice.  We agree with the trial court.

 Veniremember M.C. initially acknowledged that she had formed an opinion as to McGahee's guilt, but upon further questioning, she stated that she could ignore the information she had previously received and decide the case based only on the evidence presented at trial.  She further stated that she understood that McGahee was presumed innocent until proven guilty, and stated that she could apply that presumption to McGahee.  A veniremember need not be excused unless he or she is unable to set aside information obtained from sources outside the jury trial.  Tomlin v. State, [Ms. CR-98-2126, May 31, 2002] --- So. 2d ---- (Ala. Crim. App. 2002).  Veniremember H.O. stated that he was the father-in-law of a prosecutor in the district attorney's office.  That attorney was not involved in McGahee's prosecution, and Alabama law did not require that H.O. be excused on that ground.  § 12-16-150(4), Ala. Code 1975.  The trial court did not abuse its discretion in denying McGahee's challenges for cause.  Tomlin, supra.  Therefore, defense counsel was not deficient for failing to have the trial court remove the veniremembers from the jury for cause.  Moreover, as the trial court correctly noted, defense counsel exercised peremptory challenges to remove M.C. and H.O. from the jury.

 McGahee failed to establish deficient performance or prejudice as a result of counsel's actions.  The trial court correctly denied McGahee's claim for relief, and we affirm the court's judgment on this issue.

(Doc. 10, Vol. 53 at 10506-10).

 With respect to petitioner's claim that trial counsel was ineffective at his resentencing for allowing voir dire of the venire to begin without petitioner being present in the courtroom, the Alabama Court of Criminal Appeals stated:

 McGahee's next claim is that trial counsel was ineffective to allow voir dire of prospective jurors outside of McGahee's presence at his second sentencing hearing.  He argues that if counsel had taken proper steps to ensure McGahee's presence, the prejudicial procedure would not have occurred.  The trial court stated that counsel did, in fact, object when voir dire proceedings began before

McGahee was brought into the courtroom, so counsel's performance was not deficient.  The court further found that this Court and the Alabama Supreme Court held that McGahee was not prejudiced as a result of his absence from the courtroom during general qualification of the veniremembers.  McGahee v. State, 632 So. 2d 976, 978-80 (Ala. Crim. App.), aff'd, 632 So. 2d 981, 984 (Ala. 1993).

The trial court's analysis of this claim is correct, and its judgment in that regard is due to be affirmed.  When general qualification of the venire began at McGahee's second sentencing hearing before McGahee was in the courtroom, counsel objected.  His performance was, therefore, not deficient.  This Court and the Alabama Supreme Court found no prejudice to McGahee as a result of his brief absence from the courtroom.  Because McGahee failed to prove either prong of the Strickland test, the trial court's denial of this claim was correct.

(Id. at 10544-45).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that petitioner failed to establish that his trial counsel was ineffective as he has alleged in habeas claim 31.  As the state court found, the record shows that counsel conducted extensive voir dire questioning of the venire at petitioner's trial and reasonably exercised his peremptory strikes in accordance with the responses.  In addition, trial counsel vehemently objected to the trial court's rulings denying his challenges to strike some of the venire members for cause and granting the State's motion to strike other venire members for cause.  (Doc. 10, Vol. 2 at 283-399; Vol. 3 at 401-34).  Also, as the state court found, trial counsel clearly objected to the court allowing voir dire of the venire at petitioner's resentencing while petitioner was absent from the courtroom.  (Doc. 10, Vol. 10 at 1962).  Therefore, trial counsel's performance was not deficient as alleged.  Moreover, even if trial counsel had raised additional or different objections regarding these issues during voir dire,

68

petitioner has failed to show that there is "a reasonable probability that . . . the result of the

proceeding would have been different." Strickland, 466 U.S. at 694. As the state court found,

because petitioner was granted a resentencing after his direct appeal, with a different jury that

recommended life without parole, he has failed to show how he was prejudiced by the trial court

granting the State's motion to remove some of the venire members for cause based upon their

expressed opposition to application of the death penalty. Further, as the state court found, neither

venire members M.C. nor H.O. ultimately served on the jury; thus, petitioner has failed to show

how he was prejudiced by the trial court's refusal to grant his motion to strike these two jurors for

cause. (Doc. 10, Vol. 34 at 6610). Finally, petitioner has failed to show any prejudice from his

brief absence from the courtroom during voir dire at his resentencing, which occurred during the

general qualification of the jury.[10] (Id. at 1985). The Court agrees with the Alabama appellate

---

[10] In its memorandum opinion affirming the denial of Rule 32 relief on this claim, the
Alabama Supreme Court further stated:

> McGahee also contends that the trial court's voir dire
> examination of veniremembers outside McGahee's presence
> violated his rights to a fair trial and to a reliable sentencing
> hearing. McGahee was not present when the trial court began to
> question the veniremembers concerning their general
> qualifications. The Court of Criminal Appeals held that
> McGahee's absence from part of the voir dire was harmless error,
> because the jury recommended life without parole.
> . . . We agree with the Court of Criminal Appeals that only
> harmless error occurred when the trial court conducted general
> questioning of the venire in McGahee's absence. . . . "It is well
> settled that a defendant has a right to be present during every stage
> of his trial; and without his presence at every stage, the court has
> no jurisdiction to pronounce judgment against him." Ex parte
> Hammond, 510 So. 2d 153, 154 (Ala.1987). However, the guilt
> phase of McGahee's case had already taken place. The capital
> sentencing jury of which McGahee complains returned a
> recommendation of the lesser sentence of life without parole.
> McGahee could not have obtained a more favorable

courts that any error that occurred from petitioner's brief absence from the courtroom was harmless.  Cf. United States v. Betancourt, 734 F.2d 750, 759 (11th Cir. 1984) (finding no prejudice and only harmless error resulting from the trial court's communication with the jury outside the presence of defendants).  Thus, petitioner's claim of ineffective assistance of counsel, as alleged in habeas claim 31, is without merit.

Accordingly, with respect to each of petitioner's habeas claims based on ineffective assistance of counsel, petitioner has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law set forth in Supreme Court case law or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.  Likewise, petitioner has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case.  To the contrary, the decision of the Alabama Court of Criminal Appeals regarding petitioner's ineffective assistance of counsel claims is completely consistent with the principles outlined in Strickland.  Thus, petitioner has not established that he is entitled to relief under § 2254(d)(1).

In addition, petitioner has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an

_____

recommendation from the jury, which chose between sentences of life without parole and death.  Clearly, the jury's recommendation indicates no prejudice to McGahee due to his absence during the questioning about general qualifications.

Ex parte McGahee, 632 So. 2d 981, 984 (Ala. 1993).

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court must presume as correct the determinations of all factual issues made by the state court.  28 U.S.C. § 2254(e).

As Judge Meigs expressed in his order denying petitioner's petition for Rule 32 relief on these claims, petitioner was not convicted and sentenced to death in this case because of ineffective assistance of counsel.  "[Petitioner] was convicted and sentenced to death because of the overwhelming evidence against him and the brutality of the crime."  (Doc. 10, Vol. 25 at 4951).  There are cases in which "even a flawless performance by counsel would have had little effect on the outcome."  Hays v. State of Alabama, 85 F.3d 1492, 1496 (11th Cir. 1996).  This is one such case.  Accordingly, petitioner's petition for habeas relief on the basis of claims 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 28, 30, and 31 is due to be denied.

      2.      Penalty Phase Errors: Claims 34, 35, 37, 47, 49, 50, 52, 53, 55, 58, and 65.

Petitioner asserts next in his petition that he is entitled to relief under § 2254 based upon various penalty phase errors.  (Doc. 1 at 46, *et. seq*.).  Respondent answers that each of these claims was considered by the state courts and denied on the merits.

In claim 34, petitioner alleges that, at his resentencing, the trial court improperly relied on the non-fatal injuries of Dee Ann Duncan in finding the heinous, atrocious, or cruel aggravating circumstance and that the trial court equated petitioner's desire to embarrass or humiliate his victims with this aggravating circumstance.  (Doc. 1 at 46).  The Court has already addressed this issue in relation to habeas claim 13.  For the reasons set forth in that discussion, the Court

likewise finds claim 34 to be without merit.[11]

In claim 35, petitioner alleges that the trial court prohibited him from presenting evidence about the physical effects of electrocution as a mitigating circumstance. (Doc. 1 at 47). The Court has already addressed this issue in relation to habeas claim 9. For the reasons set forth in that discussion, the Court likewise finds claim 35 to be without merit.[12]

In claim 37, petitioner alleges that the procedure of judicial override in Alabama is unconstitutional because it is standardless. (Doc. 1 at 47). The Court has already addressed this issue in relation to habeas claim 13. For the reasons set forth in that discussion, the Court likewise finds claim 37 to be without merit.

In claim 47, petitioner alleges that, at his resentencing, the prosecutor improperly prejudiced the jury by arguing that mercy had no place in a capital sentencing, that the jury's role was to vindicate the rights of the victims, and that petitioner was the equivalent of a snake, a liar, and Satan. (Doc. 1 at 54; Doc. 10, Vol. 13 at 2574-76). Petitioner raised this claim on direct appeal of his resentencing (Doc. 10, Vol. 19 at 3744-46), and, in its memorandum opinion affirming petitioner's death sentence, the Alabama Court of Criminal Appeals stated:

> This court is required by § 13A-5-53(a), Code of Alabama 1975, to review this cause to determine whether any error adversely affecting the rights of the appellant was made during the sentencing proceedings and whether the trial court's findings concerning the aggravating and mitigating circumstances are supported by the record.
>
> . . . We find no evidence in the record to suggest that the sentence

---

[11] The Court notes that claims 34 and 50 are identical. Therefore, claim 50 is also without merit.

[12] The Court notes that claims 35 and 52 are identical. Therefore, claim 52 is also without merit.

72

> of death was imposed under the influence of passion, prejudice, or
> any other arbitrary factor.  Our independent weighing of the
> aggravating and mitigating circumstances convince us that death
> was the proper sentence.

McGahee v. State, 632 So. 2d 976, 980-81 (Ala. Crim. App. 1993).  Affirming the decision of the

Alabama Court of Criminal Appeals, the Alabama Supreme Court further stated:

> We have also thoroughly reviewed the record before us for error
> concerning the various other issues that McGahee has raised, as
> well as for plain error not raised.  We conclude that the Court of
> Criminal Appeals correctly ruled on the issues raised before that
> court.  Furthermore, we have found no plain error.  Therefore, the
> judgment of the Court of Criminal Appeals is affirmed.

Ex parte McGahee, 632 So. 2d 981, 984 (Ala. 1993).

Having reviewed the record in this matter, the Court agrees with the Alabama appellate

courts that petitioner failed to establish that the prosecutor's inflammatory remarks adversely

affected his rights during the resentencing proceeding.  At the resentencing hearing, the judge

instructed the jury that the attorneys were not witnesses, that their arguments were not evidence

and should not be considered as evidence, and that the court alone would instruct them on the

law.  (Doc. 10, Vol. 11 at 2116).  "[H]abeas relief is due to be granted for improper prosecutorial

argument at sentencing only where there has been a violation of due process, and that occurs if,

but only if, the improper argument rendered the sentencing stage trial fundamentally unfair."

Romine v. Head, 253 F.3d 1349, 1366 (11th Cir. 2001) (citing Brooks v. Kemp, 762 F.2d 1383,

1400 (11th Cir. 1985)).  "An improper prosecutorial argument has rendered a capital sentencing

proceeding fundamentally unfair if there is a reasonable probability that the argument changed the

outcome, Brooks, 762 F.2d at 1401, which is to say that absent the argument the defendant would

not have received a death sentence."  Romine, 253 F.3d at 1366.  At the conclusion of the

resentencing hearing, the resentencing jury was given a choice between recommending the death penalty and recommending that petitioner receive a sentence of life imprisonment without parole. (Doc. 10, Vol. 13 at 2579).  The jury recommended that petitioner be given life imprisonment without parole.  Assuming, *arguendo*, that the prosecutor's comments were objectionable, they clearly did not unduly influence the jury, which gave petitioner the best possible recommendation that it could give.  Furthermore, petitioner has not shown that a reasonable probability exists that the trial court would not have imposed the death penalty if the prosecutor had not referred to petitioner as a liar, a snake, or Satan.  Therefore, petitioner's claim that his constitutional rights were violated, as set forth in habeas claim 47, is without merit.

In claim 49, petitioner alleges that his constitutional right to a reliable sentencing procedure was violated by the State's voir dire of venire members outside his presence.  (Doc. 1 at 57).  The Court has already addressed this issue in relation to habeas claim 31.  For the reasons set forth in that discussion, the Court likewise finds claim 49 to be without merit.

In claim 53, petitioner alleges that, at his resentencing, the trial court violated his constitutional rights by relying on un-Mirandized statements that he made to a psychiatrist during a court-ordered competency interview related to a previous conviction for child abuse.  Petitioner claims that he was not advised of his Miranda rights before talking to Dr. Kamal Nagi about a previous child abuse conviction and that the trial court improperly relied on Dr. Nagi's testimony in finding the existence of the aggravating circumstance that petitioner previously had been convicted of a felony involving the use or threat of violence to the person.  (Doc. 1 at 62; Doc. 31 at 136).

On direct appeal of petitioner's resentencing, the Alabama Court of Criminal Appeals

74

rejected all of petitioner's challenges to the trial court's findings of aggravating circumstances,

stating in its memorandum opinion:

> This court is required by § 13A-5-53(a), Code of Alabama 1975, to review this cause to determine whether any error adversely affecting the rights of the appellant was made during the sentencing proceedings and whether the trial court's findings concerning the aggravating and mitigating circumstances are supported by the record.
>
> In its sentencing order, the trial court found the existence of three aggravating factors: 1) that the appellant had previously been convicted of a felony involving the use or threat of violence to the person; 2) that the appellant had knowingly created a great risk of death to many persons; 3) that the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses. The evidence at the sentencing hearing showed that the appellant had been previously convicted for child abuse, that he had fired a gun in a classroom full of students, and that in addition to shooting his ex-wife and Cassandra Lee, the appellant had, prior to shooting his ex-wife, savagely beat her and Dee Ann Duncan and then had removed his ex-wife's clothing and had attempted to sexually abuse her. This evidence clearly supports the trial court's findings concerning the aggravating circumstances.
>
> The trial court found the existence of four mitigating circumstances: 1) that the appellant had committed the capital offense while he was under the influence of extreme mental or emotional disturbance; 2) that the appellant had served honorably in the military; 3) that the appellant had experienced a religious conversion; and 4) that the appellant has expressed some remorse for his actions. The trial court stated in its order that it had carefully considered all of the testimony concerning whether the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired due to his alcoholism, and it specifically found that this mitigating circumstance did not exist. A review of the record reveals that the trial court's finding concerning the existence of mitigating evidence is supported by the evidence.
>
> We find no evidence in the record to suggest that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances convince us that death was the proper sentence. The appellant's sentence of death is

> not disproportionate to the penalty imposed in similar cases,
> considering the crime and this appellant.  Holladay v. State, 549 So.
> 2d 122 (Ala. Crim. App. 1988), aff'd, 549 So. 2d 135 (Ala. 1989),
> cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L. Ed. 2d 569 (Ala.
> 1989); Hooks v. State, 534 So. 2d 329 (Ala. Crim. App.1987), aff'd,
> 534 So. 2d 371 (Ala. 1989), cert. denied, 488 U.S. 1050, 109 S. Ct.
> 883, 102 L. Ed. 2d 1005 (Ala. 1989).  As stated previously in this
> opinion, the appellant's capital convictions have already been
> affirmed.  The appellant's sentence of death is also hereby affirmed.

McGahee v. State, 632 So. 2d 976, 980-81 (Ala. Crim. App. 1993).

Affirming the decision of the Alabama Court of Criminal Appeals, the Alabama Supreme

Court further stated:

> We have also thoroughly reviewed the record before us for error
> concerning the various other issues that McGahee has raised, as
> well as for plain error not raised.  We conclude that the Court of
> Criminal Appeals correctly ruled on the issues raised before that
> court.  Furthermore, we have found no plain error.  Therefore, the
> judgment of the Court of Criminal Appeals is affirmed.

Ex parte McGahee, 632 So.2d 981, 984 (Ala. 1993).[13]

Having reviewed the record in this matter, the Court agrees with the Alabama appellate

courts that petitioner failed to establish that his Fifth Amendment rights were violated by Dr.

Nagi's testimony at petitioner's resentencing hearing that petitioner had a prior conviction for a

felony involving the use or threat of violence to another person.[14]  Although Dr. Nagi testified at

---

[13] Petitioner also raised this claim in his Rule 32 proceedings (Doc. 10, Vol. 23 at 4413); however, the trial court held that the claim had been "raised on direct appeal from McGahee's conviction and death sentence" and was "barred from further review."  (Doc. 10, Vol. 25 at 4875).  That finding was affirmed by the Alabama Court of Criminal Appeals in McGahee v. State, 885 So. 2d 191, 228 (Ala. Crim. App. 2003).

[14] Even if the Court were to consider the merits of habeas claim 53, de novo, the result would be the same.  This claim is without merit.

the hearing that petitioner had spent time in jail for child abuse (Doc. 10, Vol. 13 at 2439-40), petitioner had already testified at the hearing that he had been convicted of child abuse of his stepson in Louisiana and that he had been sentenced to eighteen months in prison.  (Doc. 10, Vol. 12 at 2291-92).  Furthermore, petitioner claimed that he was insane at the time of the murders, and the trial court found, as a mitigating circumstance, that petitioner was under the influence of extreme mental or emotional disturbance at the time of the murders.  (Doc. 10, Vol. 14 at 2635-37).  "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding."  Estelle v. Smith, 451 U.S. 454, 468 (1981).  However, "[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case."  Estelle, 451 U.S. at 465.  Thus, in a case such as this, no Fifth Amendment privilege is implicated.  Finally, even without considering the aggravating circumstance of a prior felony conviction involving the use or threat of force to a person, the two remaining aggravating circumstances fully support the trial court's imposition of the death penalty in this case.  Therefore, petitioner's claim that his constitutional rights were violated by the trial court's alleged reliance on un-Mirandized statements in finding the existence of an aggravating circumstance, as alleged in claim 53, is without merit.

In claim 55, petitioner alleges that his constitutional rights were violated by the trial court's reliance on Dr. Nagi's testimony that petitioner could appreciate the criminality of his conduct at the time that he committed the murders.  Petitioner claims that Dr. Nagi's opinion was based on a police report and social workers' reports that had not been introduced into evidence.

77

(Doc. 1 at 66).  The Court has already addressed this issue in relation to habeas claim 11.  For the reasons set forth in that discussion, the Court likewise finds claim 55 to be without merit.[15]

In claim 58, petitioner alleges that his constitutional rights were violated at his resentencing by the trial court's reasonable doubt instructions to the jury regarding the finding of aggravating circumstances.  Petitioner argues that the trial court's instructions improperly included references to "a moral certainty" and "actual doubt,"  which petitioner argues implied that a finding of aggravating circumstances could be maintained upon a lesser degree of proof than is constitutionally required.  (Doc. 1 at 69; Doc. 31 at 140).  Petitioner raised this claim on direct appeal of his resentencing (Doc. 10, Vol. 19 at 3741-43), and the Alabama Court of Criminal Appeals rejected the argument.  See McGahee v. State, 632 So. 2d 976, 980-81 (Ala. Crim. App. 1993); see also Ex parte McGahee, 632 So. 2d 981, 984 (Ala. 1993).

---

[15] In addition, claim 55 involves an issue of state law.  Federal habeas relief for state prisoners attacking their conviction is limited in scope:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of a constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  Questions of state law rarely have federal constitutional significance because "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Such questions are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Id. at 1055.  Petitioner has failed to show that the trial court erred in allowing Dr. Nagi to render his opinion at sentencing that petitioner could appreciate the criminality of his conduct at the time that he committed the murders based, in part, on hearsay evidence.  Moreover, petitioner has failed to show that any such alleged error rendered his entire trial fundamentally unfair.  Therefore, petitioner's claim 55 is without merit for this reason as well.

Having reviewed the record in this matter, the Court agrees with the Alabama appellate courts that petitioner failed to establish that his constitutional rights were violated at his resentencing by the trial court's reasonable doubt instructions to the jury regarding its finding of aggravating circumstances.[16]  As discussed in relation to habeas claim 28, the record shows that, in its reasonable doubt instructions to the jury during the guilt and penalty phases of petitioner's trial, the trial court included references to the phrases "a moral certainty" and "actual doubt." This Court found in relation to habeas claim 28 that the trial court's instructions at the guilt phase, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury.  The Court has reviewed the trial court's charge at resentencing and likewise finds that those instructions correctly conveyed to the jury that it must be convinced from the evidence that any aggravating circumstances existed beyond a reasonable doubt.  (Doc. 10, Vol. 13 at 2578-82).  Unlike the jury instructions in Cage v. Louisiana, 498 U.S. 39 (1990), to which petitioner cites, the trial court did not equate reasonable doubt to "a grave uncertainty."  Id. at 41.  The trial court's sentencing instructions more closely resemble those in Victor v. Nebraska, 511 U.S. 1,  8-22 (1994), in which the court held that instructions on reasonable doubt, which included references to "a moral certainty" and "an actual and substantial doubt," when taken as a whole, correctly conveyed the concept of reasonable doubt to the jury.  Therefore, petitioner's claim that his constitutional rights were violated, as set forth in habeas claim 58, is without merit.

In claim 65, petitioner alleges that his constitutional rights were violated during the penalty phase of the trial by the introduction of photographs of the victims' bodies that were gruesome, cumulative, and served no purpose other than to prejudice petitioner.  (Doc. 1 at 77).

---

[16] Even if the Court were to consider the merits of habeas claim 58, *de novo*, the result would be the same.  This claim is without merit.

The Court has already addressed this issue in relation to habeas claim 12. For the reasons set forth in that discussion, the Court likewise finds claim 65 to be without merit.[17]

Accordingly, with respect to each of petitioner's penalty phase habeas claims, petitioner has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law set forth in Supreme Court case law or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Likewise, petitioner has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Thus, petitioner has not established that he is entitled to relief under § 2254(d)(1).

In addition, petitioner has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court must presume as correct the determinations of all factual issues made by the state court. 28 U.S.C. § 2254(e). Accordingly, petitioner's petition for habeas relief on the basis of claims 34, 35, 37, 47, 49, 50, 52, 53, 55, 58, and 65 is due to be denied.

     3.      <u>Guilt Phase Errors: Claims 1, 48, 61, 62, and 68</u>.

---

[17] The Court further notes that claim 65 involves an issue of state law. As discussed in relation to habeas claim 55, such questions are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair." <u>Carrizales</u>, 699 F.2d at 1055. Petitioner has failed to show that the trial court erred by admitting photographs of the victims' bodies during the penalty phase of petitioner's trial. Moreover, petitioner has failed to show that any such alleged error rendered his entire trial fundamentally unfair. Therefore, petitioner's claim 65 is without merit for this reason, as well.

In claim 1, petitioner asserts that the prosecutor used his peremptory strikes in a racially discriminatory manner to remove all of the African Americans from the jury pool, depriving petitioner of his rights to equal protection, due process, and a fair trial protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (Doc. 1 at 8, 14). Respondent asserts that this claim was raised in the state courts and denied on the merits.[18]

The record shows that petitioner presented habeas claim one to the Alabama Court of Criminal Appeals on direct appeal, and, in its memorandum opinion affirming petitioner's convictions, the court stated:

> The appellant contends the trial court erred in failing to quash the jury because the State allegedly used some of its peremptory strikes to exclude blacks from the jury on the basis of race, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).
>
> The State used sixteen of its twenty-two strikes to exclude all of the black venire members from the jury.  However, one black did serve as an alternate juror.  Although the trial judge in this case did not make a specific determination that a prima facie case of discrimination had been established by this appellant, she allowed the State to explain its use of peremptory strikes for the record.
>
>> "We follow the rule that, when the prosecution's explanations for its strikes are of record, we will review the trial court's findings of discrimination vel non, even though there has been no express finding by the trial court that a prima facie case has been established.  Currin v. State, 535 So. 2d 221 (Ala. Cr. App. 1988).   See also United States v. Forbes, 816 F.2d 1006 (5th Cir. 1987).  In other words, when the trial court calls upon the prosecutor for an explanation, without expressly finding a prima facie case, we will proceed directly to evaluate the

_____

[18] For the reasons set forth in the Court's order of February 15, 2007 (Doc. 22), only that portion of claim one related to the prosecutor's use of his peremptory strikes against six black jury venire members, identified herein as juror numbers 17, 31, 57, 62, 99, and 106, has been properly exhausted in the state court and will be reviewed by this Court.

sufficiency of the ensuing explanation.  Where the
trial court requires the prosecution to explain its
peremptory challenges without first finding the
existence of a prima facie showing of discrimination,
we may fairly conclude that 'the inquiry implied
such a finding, and shifted the burden of justification
to the prosecutor.'  People v. Turner, 42 Cal. 3d 711,
__, 230 Cal. Rptr. 656, __, 726 P.2d 102, 106
(1986)."

Williams v. State, [Ms. 3 Div. 310, December 30, 1988, __ So. 2d.
__ (Ala. Crim. App. 1988).

The State provided explanations for all of its peremptory
strikes of both blacks and whites from the venire.  In brief, the
appellant alleges that the State did not provide a valid non-
discriminatory explanation for six of the sixteen blacks who were
struck from the jury.  The following excerpts from the record are
the State's explanations with reference to the six venire members
whom the appellant claims were excluded on racial grounds.

"Juror number 57, . . ., we struck because of the
recommendation of our expert based on his
investigation of her general intelligence level.  Her
age also.  She was opposed to capital punishment.
We had information from sources from the
community that we had contacted that there was a
general reputation that was not good and there was a
strong recommendation from our sources that she be
a must strike."  (R. 1278-79).

"We struck juror number 31, . . ., a black female
born in 1929.  She had requested not to serve.  Our
expert recommended that she be struck based on his
examinations of her from the various points I have
already made reference to.  She was a school
crossing guard and made repeated requests in the
course of voir dire not to serve in this case.  We felt
that she needed to be struck."  (R. 1279-80).

" We struck juror number 62, . . . .  He was a teacher.
We consider teachers as individuals who would be a
matter for us to concern ourselves with in striking
due to their social approach to dealing with people.
The family generally reported to have been involved
in some criminal activity previously.  That
information was given to us from sources as
unpredictable.  Defense attorney and his family were

friends and associates.  He related that he was actually teaching the defense attorney's daughter and had coached defense attorney's son and indicated that he felt that he knew the defense attorney very well.  There seemed to be some question about his position on capital punishment.  He indicated at one time that he was generally opposed to it, though could have performed that and on the second event indicated that he – the second question, he indicated that he could impose the death penalty."  (R. 1280-81).

"We struck juror number 17, . . ., black female, who was a service representative at the Telephone Company.  She was an individual who we had very little information on other than the fact that she was working at the Telephone Company.  What we observed during the course of examination was reported to us at one point in time that she appeared to be upset or glaring at the parties from the District Attorney's Office and asking questions.  She was divorced.  There was some concern on our part about maintaining her as a juror, but not having any further information, recommended that level of striking, especially after [juror number 99] was struck . . . . We felt we would be required to strike her."  (R. 1283-84).

"Number 99, . . ., was struck by us at the end of the striking process.  Our problem with [juror number 99] was basically he knew the defense attorney well.  He said his wife and son and (sic) worked together.  We also knew [juror number 99].  We considered seriously maintaining him on the jury until such time as in the course of voir dire he approached the bench – prior to striking the jury, he approached the bench and reported that he be off the case because he was leaving the next day for New Orleans and asked the Court to defer him.  He discussed at the bench concerning conflicting civic duties, that both of these matters required his personage due to being civic responsibilities.  After that conference, we felt he would be a very dissatisfied juror and might well blame us for leaving him on the jury and felt compelled to strike him if the defense didn't.  We held him towards the very end and defense did not

strike, so we did.  It certainly put us in a quandary as to the striking of this juror until at the very end of the process."  (R. 1284).

"Juror number 106, . . ., is a black male juror.  We left him as an alternate at one point in the striking process prior to [juror number 99's] pronouncement. He was sought as perhaps a juror to be left on the entire panel.  However, with [juror number 99] leaving, we felt we did not want to leave him individually.  We were concerned about the fact that he was a teacher and we simply did not have any further information on  [juror number 106] other than he was a teacher and that he seemed to know [juror number 99].  We did attempt and ask for a recess during the period to locate further information about  [juror number 106], attempting to make some emergency type phone calls, but were unsuccessful. We felt we had other choices which we did have clear information on and left him as an alternate." (R. 1286).

The State asserted several reasons for striking [juror number 57].  Although age may be a valid explanation under certain circumstances, see Levert v. State, 512 So. 2d 790 (Ala. Crim. App. 1987), the State failed to demonstrate why [her] age was significant to this case.  See Williams.  Likewise, the State's reference to this prospective juror's general reputation would be an insufficient reason by itself.  See Roman v. Abrams, 822 F.2d 214 (2d Cir. 1987).  However, the fact that [juror number 57] was opposed to capital punishment was certainly a valid race-neutral reason for excluding her from the jury panel.  Certainly, the State would prefer not to have a juror who has general objections to the death penalty, the maximum sentence which could be imposed in this case.  See Yarbough v. State, 732 S.W.2d 86 (Tex. Ct. App. 1987).

[Juror number 31] was struck because she stated during voir dire that she did not want to serve on the jury.  We find this to be a legitimate non-discriminatory explanation because a juror who willingly wishes to fulfill his or her civic duty is preferable to someone who does not want to serve on a jury.  Furthermore, a white venire member was struck for this same reason.  (R. 1283). This is an indication that the State's decision to strike [juror number 31] was not racially motivated.  See Mathews v. State, 534 So. 2d 1129 (Ala. Crim. App. 1988); Ex parte Branch, 526 So. 2d 609 (Ala. 1987).

The explanation that [juror number 62] because he was a

84

teacher is not, without more, a legitimate non-discriminatory reason.  See Williams; Slappy v. State, 503 So. 2d 350 (Fla. Dist. Ct. App. 1987); aff'd, 522 So. 2d 18 (Fla. 1988), cert. denied, __ U.S. __, 108 S. Ct. 2873, 101 L. Ed. 2d 909 (1988).  However, [juror number 62's] relationship with defense counsel and his family and his general opposition to the death penalty are valid non-racial reasons for striking [him].  See Johnson v. State, 512 So. 2d 819 (Ala. Crim. App. 1987); Lewis v. State, 535 So. 2d 228 (Ala. Crim. App. 1988); United States v. Cartlidge, 808 F.2d 1064 (5th Cir. 1982).

> The State's assertions that [juror number 17] was struck because of her demeanor and because she was divorced (as was this appellant and his divorce from one of the victims in this case played a major role in this case) provided legitimate race-neutral reasons. See Levert; Cartlidge.

> The State's explanation for striking [juror number 99] does not appear to be racially based.  [Juror number 99] was struck because he knew defense counsel and because he asked to be deferred from jury service.

> [Juror number 106] was struck because he was a teacher and because the State did not have a lot of information on him.  The State's assertion that it strikes teachers as a general rule because of "their [teachers'] social approach to dealing with people" (R. 1281) is totally insufficient to establish why a teacher, specifically [juror number 106], would be biased against the State in this particular case.  In fact, under the circumstances of this case (the murders took place in a school classroom), teachers would be just as likely to be biased in favor of the State.  See Williams.  The State's other explanation for striking [juror number 106] is somewhat weak but we find it to be sufficient because the State struck a white juror for the same reason (R. 1285).  This fact indicates that the State's explanation was legitimate and the decision to strike [juror number 106] was not racially motivated.  See Matthews; Branch.

> After reviewing the State's reasons for the use of its peremptory strikes (including those not specifically challenged by the appellant) "individually and collectively", Williams, we concluded that the trial judge correctly denied this appellant's motion to quash the jury.

(Doc. 10, Vol. 17 at 3342-48).

Having reviewed the record in this case, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons set forth in its memorandum opinion, that petitioner failed to establish that the State used its peremptory strikes to exclude blacks from the jury on the basis of race, in violation of the governing law set forth in Batson v. Kentucky, 476 U.S. 79, 97-98 (1986). Under Batson, once a defendant has made a prima facie showing that a prosecutor exercised a peremptory challenge on the basis of race, the prosecutor must present a race-neutral explanation for striking the juror in question.  Rice v. Collins, 546 U.S. 333, 126 S. Ct. 969, 973 (2006) (citing Batson, 476 U.S. at 97-98).  The record shows, as set forth above, that the prosecutor articulated race-neutral reasons for exercising the State's peremptory strikes.  (Doc. 10, Vol. 7 at 1322-1334).  Although the prosecutor must present "a comprehensible reason," for striking a potential juror, he is not required to present "an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices."  Id. at 973-74.  The trial court then must evaluate "the persuasiveness of the justification" proffered by the prosecutor and determine whether the defendant has carried his burden of proving purposeful discrimination.  Id. at 974. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  Id.   Under AEDPA, a federal habeas court can grant petitioner's petition only if it was "unreasonable to credit the prosecutor's  race-neutral explanations for the Batson challenge."  Id.   Having reviewed the record at length, the Court is satisfied that the state court decision was a reasonable determination of the facts in light of the evidence presented.  Therefore, petitioner's claim that his constitutional rights were violated, as set forth in habeas claim 1, is without merit.

In claim 48, petitioner alleges that his right to an impartial jury was violated by the misconduct of a biased juror.  (Doc. 1 at 55-57).  Specifically, petitioner claims that one of the jurors at his trial intentionally and deceptively concealed during voir dire that he had been a

victim of a robbery at a gas station at which he had worked nine years earlier.  (Id.).  Petitioner

raised this claim during his Rule 32 proceedings, and, in its memorandum opinion affirming the

denial of relief on this claim, the Alabama Court of Criminal Appeals stated:

> McGahee first argues that the trial court erred when it determined that his claim of juror misconduct was procedurally barred.  In his Rule 32 petition, McGahee alleged that Juror D.D. failed to disclose that he had previously been the victim of a violent crime.  (C. 581.)  The State argued in its answer that the claim was procedurally barred because it could have been, but was not, raised at trial or on appeal. Rule 32.2(a)(3) and (5), Ala. R. Crim. P. (C. 353, 595.)
>
> At the evidentiary hearing, McGahee's trial counsel, Bruce Boynton, testified that his pretrial request for funds to hire an investigator had been denied.  Trial counsel further stated that cocounsel would have helped in the case, but that he did not have cocounsel, and he represented McGahee alone.  (R. 32.)  Counsel testified that, if he had been able to hire an investigator, he would have been able to get more information about the veniremembers, but that he was unable to do such investigation by himself.  Trial counsel further stated that, during jury selection, he attempted to obtain impartial jurors-persons who had not been victims of serious violent crimes, and who had no friends or relatives who had been victims.  (R. 25-26.)  On cross-examination, Boynton testified that if a prospective juror had been the victim of a violent crime nearly 10 years before the trial, he would have considered the remoteness of the crime in determining whether to exercise a peremptory strike.  When asked whether he would have struck a prospective juror who had been a robbery victim, but who indicated that upon conviction he would vote for life imprisonment without parole, Boynton testified, "I would have very much wanted that person on the jury given the circumstances that we were developing at that time."  (R. 63.)  In response to the State's question, "So if you had to choose between being a robbery victim or a victim of a violent crime, if he was going to vote for life without parole?" Boynton stated, "He's my juror."  (R. 63.)
>
> Although the trial judge stated that the juror-misconduct claim was procedurally barred, he allowed the juror to testify without prejudice to the State's claim of procedural bar.  (R. 102.) D.D. testified that he was selected as a juror in McGahee's 1986

trial.  D.D. said that he had formerly been employed at a service station and that in 1977, while he was employed at the service station, robbers had entered the store brandishing a gun and a knife. He was struck in the face, and the robbers took money from the station.  (R. 102-03.)  D.D. said that he did not know whether any trial was held as a result of the robbery.  He said that he testified against one of the robbers, but acknowledged that he might have testified before a grand jury and not at a trial.  D.D. said that the attorneys at McGahee's trial did not ask whether he previously had been a witness at a grand jury proceeding.  (R. 106.)  He said he did not intentionally withhold information from McGahee's defense counsel, but he was not thinking about the robbery when he was on the jury.  D.D. further testified that the fact that he had been a victim of a crime did not affect his feelings about McGahee's guilt or innocence, nor did it prejudice him against McGahee.  (R. 107-08.)

D.D. also testified that he knew before he was selected for the jury that he would not vote for the death penalty and that, in fact, he voted for life imprisonment without parole.  (R. 108-09.) He stated that he did not inform the attorneys at McGahee's trial that he was opposed to the death penalty.  (R. 109.)

The record from McGahee's trial reveals that during voir dire questioning defense counsel asked, "How many of you have served as a prosecuting witness in a previous case involving criminal charges?"  D.D. did not respond to that question.  (TR. 250.)  We note that D.D. also did not respond to questions about whether any veniremember was opposed to capital punishment. (TR. 225-26, 229-30.)  At the hearing on the Rule 32 petition, D.D. testified that he knew he was not the only person opposed to capital punishment.  (R. 109.)

In its order denying McGahee's Rule 32 petition, the trial court determined that the juror-misconduct claim was procedurally barred because it could have been, but was not, raised at trial and on appeal.  (C. 754.)  The court stated that, in addition, McGahee failed to establish that the claim was based on newly discovered evidence.  (C. 824.)  The trial court addressed the merits of the claim in the alternative to its procedural bar holding.  (C. 824-32.) The court quoted extensively from this Court's opinion in Brown v. State, 807 So. 2d 1 (Ala. Crim. App. 1999).  In Brown, the appellant claimed in postconviction proceedings that he was entitled to a new trial because a juror had failed to disclose that, years before the trial, he had been the victim of a robbery.  Observing that there was no evidence indicating that Brown had been prejudiced

by the juror's failure to disclose this information, and that the juror testified that his experience as a robbery victim did not affect his impartiality, we affirmed the denial of the postconviction petition. 807 So. 2d at 12.  The trial court concluded that McGahee was not entitled to any relief on his claim because there was no evidence indicating that he had been prejudiced by the lack of information concerning the juror's involvement in the robbery, that the juror testified at the Rule 32 hearing that his experience did not have an impact on his impartiality at McGahee's trial, and that trial counsel testified that he would have kept D.D. as a juror even if he had known about the his victimization because D.D. was opposed to the death penalty. (C. 831-32.)

On appeal, McGahee contends that the trial court erred when it determined that the claim was procedurally barred.  He further argues that the trial court erred in its analysis of the merits, because the relevant legal standard is whether the juror misconduct *might have* prejudiced the defendant, and the trial court applied the actual prejudice standard.  We agree with McGahee that the trial court erred when it determined that the claim was procedurally barred.  While we also agree with McGahee that the "might-have-been-prejudiced" standard is the appropriate one, a thorough review of the record reveals that McGahee failed to meet his burden of proof as to this claim.  Therefore, we affirm the trial court's denial of this claim.

A juror-misconduct claim is cognizable under Rule 32.1(a), Ala. R. Crim. P., as an alleged constitutional violation, and not as newly discovered evidence.  Ex parte Pierce, 851 So. 2d 606, 613 (Ala. 2000).  The Pierce Court also stated that the Rule 32.2 grounds of preclusion apply to juror-misconduct claims.  Id. at 614. Rule 32.3, Ala. R. Crim. P., provides that, once the State has pleaded a ground of preclusion, the petitioner has the burden of disproving the ground of preclusion by a preponderance of the evidence.  We believe that McGahee sustained his burden of disproving the grounds of preclusion pleaded by the State.

Trial counsel testified at the Rule 32 hearing that the trial court had denied his request for funds to hire an investigator, and that, if he had been able to hire an investigator, he would have been able to obtain information on the veniremembers.  Counsel stated that obtaining information on the venire "was virtually an impossibility to do...."  (R. 33.)  Nothing in the record suggests that trial counsel had any information about Juror D.D.'s being the victim of a robbery.  Nor does the record support a finding that trial

counsel received any information about Juror D.D. after trial, but
within the time limit for filing a motion for a new trial.  To the
contrary, the record indicates that trial counsel did not have any
information that Juror D.D. had failed to disclose any information.
Therefore, we find that the Rule 32 court abused its discretion when
it determined that the juror-misconduct claim was precluded
because it could have been raised at trial or on appeal.

     "The proper standard for determining whether juror
misconduct warrants a new trial, as set out by this Court's
precedent, is whether the misconduct might have prejudiced, not
whether it actually did prejudice, the defendant."  Ex parte Dobyne,
805 So. 2d 763, 771 (Ala. 2001).  The trial court incorrectly applied
the actual-prejudice standard to this claim.  (C. 831.)  Although the
trial court applied an incorrect standard, we nonetheless agree with
the trial court's determination that McGahee's claim as to this issue
has no merit.

     "It is true that the parties in a case are entitled to true and
honest answers to their questions on voir dire, so that they may
exercise their peremptory strikes wisely.  See Fabianke v. Weaver,
527 So. 2d 1253 (Ala. 1988).  However, not every failure to
respond properly to questions propounded during voir dire
'automatically entitles [the defendant] to a new trial or reversal of
the cause on appeal.'  Freeman v. Hall, 286 Ala. 161, 166, 238 So.
2d 330, 335 (1970); see also Dawson v. State, [710 So. 2d 472, 474
(Ala. 1997)]; and Reed v. State, [547 So. 2d 596 (Ala.1989) ]."

Ex parte Dobyne, 805 So. 2d at 771-72.

     The Supreme Court in Ex parte Dobyne identified factors to
be used to determine whether probable prejudice existed.  The
factors include the temporal remoteness of the event, the ambiguity
of the question asked, and the juror's willfulness in providing
inaccurate information.  805 So. 2d at 772.

     "The form of prejudice that would entitle a party to relief for
a juror's nondisclosure or falsification in voir dire would be its
effect, if any, to cause the party to forgo challenging the juror for
cause or exercising a peremptory challenge to strike the juror.  Ex
parte Ledbetter, 404 So. 2d 731 (Ala. 1981); Warrick v. State, 460
So. 2d 320 (Ala. Crim. App.1984); and Leach v. State, 31 Ala. App.
390, 18 So. 2d 285 (1944.  If the party establishes that the juror's
disclosure of the truth would have caused the party either to
(successfully) challenge the juror for cause or to exercise a

peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice.  Id."

Ex parte Dobyne, 805 So. 2d at 772-73.

Juror D.D.'s victimization occurred nine years before McGahee's trial, so the remoteness of the event is fairly substantial. D.D. testified at the Rule 32 hearing that he did not intentionally withhold information when the attorneys asked whether anyone had been a victim of a crime.  That D.D. did not intentionally withhold information might best be illustrated by D.D.'s testimony from the Rule 32 hearing, during questioning by McGahee's counsel:

"Q Were you ever a victim of a crime?

"A Was I?

"Q Yes.

"A No, sir.

"Q You have never been a victim of a crime?

"A No, never have.

"Q Were you attacked at the [service station]?

"A Yes, sir."

(R. 102.)  For reasons that are unclear from the record before us, D.D. either did not readily recall his experience, or, perhaps, he did not understand the term "victim."  What is clear is that D.D. did not intentionally and willfully fail to disclose the information.  The remoteness of the information and the failure to intentionally withhold information weigh against a determination that McGahee was prejudiced by D.D.'s serving on the jury.

Furthermore, trial counsel testified at the Rule 32 hearing that, if a juror had been a victim of a violent crime and if he indicated that he would vote for life imprisonment without parole, counsel would have kept him as a juror.  He emphasized that he would have "very much" wanted that person as a juror.  (R. 63.) Based on trial counsel's testimony, it is clear that, even if D.D. had disclosed the truth during voir dire questioning, counsel would not have exercised a peremptory challenge or challenged him for cause.

91

McGahee failed to establish that he might have been prejudiced by the juror's failure to disclose information about being a robbery victim years before McGahee's trial.

Even though we find that the juror-misconduct claim was not procedurally barred, and even though the trial court applied the actual-prejudice standard, we nonetheless affirm the court order insofar as it denied this claim.  Application of the might-have-been-prejudiced standard demonstrates that McGahee is not entitled to relief on this claim, because he did not establish that trial counsel would have challenged D.D. if he had responded accurately to the questions.  McGahee failed to sustain his burden of proof on this claim.  Therefore, we affirm the trial court's denial of relief.

McGahee v. State, 885 So. 2d 191, 201-05 (Ala. Crim. App. 2003) (footnotes omitted) (emphasis in original).

Having reviewed the record in this matter, the Court finds that petitioner has failed to establish that his right to an impartial jury was violated by the misconduct of a biased juror. "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation."  Smith v. Phillips, 455 U.S. 209, 217 (1982).  "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  Id.  The remedy for allegations of juror partiality is a post-trial hearing in which the defendant has the opportunity to prove "actual bias."  Id. at 215.

"In this circuit a party attacking the integrity of a jury on the ground of a juror's prejudice must prove that prejudice by a preponderance of the evidence."  McMillon v. Estelle, 523 F.2d 1249, 1249-50 (5th Cir. 1975) (refusing to adopt a "per se rule of prejudice" where juror failed to disclose previous acquaintance with petitioner) (citing United States v. Cashio, 420 F.2d 1132

(5th Cir. 1970)).[19]

> [W]here there is juror nondisclosure[,] the defendant does not
> satisfy the requirement of showing prejudice by merely asserting
> that he might have used his peremptory challenges differently if
> disclosure had been made.  Safeguarding the right of a defendant to
> a fair trial does not require adopting a formalistic per se approach
> that would produce reversible error whenever there have been
> peremptory challenges available and nondisclosure of neutral and
> insignificant information.

U.S. v. Benedetti, 587 F.2d 728, 730 (11th Cir. 1979).

In the present case, the record shows, as the state court found, that juror "D.D." did not

willfully withhold the fact that he had been the victim of a robbery nine years prior to petitioner's

trial.  Rather, juror "D.D." simply did not recall this information when faced with counsel's

question.  (Doc. 10, Vol. 26 at 5062, 5066-67).  Juror "D.D." testified that he was not biased

against petitioner and that he ultimately voted for life imprisonment for petitioner instead of the

death penalty.  (Id. at 5068).  Petitioner's trial counsel also testified at the Rule 32 hearing that,

had he known that juror "D.D." had been a victim of a robbery and had he also known that juror

"D.D." was opposed the death penalty, he would not have struck him from the jury.  (Id. at 5022-

23).  Although the state court applied a more lenient state law standard of prejudice that than

required in Smith, the result is the same.  Petitioner failed to show that he was prejudiced as a

result of juror "D.D.'s" non-disclosure.  Therefore, his claim that his constitutional rights were

violated, as set forth in habeas claim 48, is without merit.

In claim 61, petitioner alleges that his constitutional rights were violated when the State

---

[19] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh
Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October
1, 1981.

failed to present sufficient evidence of the aggravating circumstance of sexual abuse to support a

capital murder conviction.  (Doc. 1 at 74).  The Court has already addressed this issue in relation

to habeas claim 19.  For the reasons set forth in that discussion, the Court likewise finds claim 61

to be without merit.

In claim 62, petitioner alleges that his constitutional rights were violated when the trial

court denied his motion to depose Dr. Glenn King.  (Doc. 1 at 75).  Petitioner raised this claim on

direct appeal, and, in its memorandum opinion affirming petitioner's convictions, the Alabama

Court of Criminal Appeals stated:

> On September 4, 1986, just days before the trial of this case
> began, defense counsel filed a motion with the trial court requesting
> permission to take a deposition of Dr. Glen King.  This motion
> reads as follows:
>
> > "Comes now your defendant, EARL JEROME
> > McGAHEE, through and by his attorney, Bruce
> > Boynton, and moves this honorable Court to allow
> > him to take, at the expense of the State of Alabama,
> > the deposition of Dr. Glen King, a clinical
> > psychologist located in Auburn, Alabama, as an
> > expert witness for the defendant in this cause which
> > is scheduled for September 8, 1986 for the following
> > reasons, to-wit:
> >
> > "1. That the recently appointed psychiatrist, Dr.
> > Elizabeth Sapala, notified the attorney for the
> > defendant, on the evening of September 3, 1986 that
> > the M.M.P.I. test administered to the defendant by
> > the Lunacy Commission had serious flaws and was
> > defective for the purposes of testing the defendant in
> > the areas that it purported to test the defendant;
> >
> > "2. That the said Dr. Sapala admitted that she was
> > not an expert in this particular area of testing and
> > recommended that Dr. Glen King, a Ph.D. in the
> > field of clinical psychology and this nation's leading
> > expert on the M.M.P.I. test be consulted as it

94

concerns the test administered to the defendant;

"3. That the said attorney did contact Dr. King, who was familiar with the test given to the defendant, and he stated that the said M.M.P.I. test was defective but that he would be unavailable to testify at trial here in Selma but could make himself available for a deposition;

"4. That a deposition of Dr. King can be taken on September 5, 1986, in Auburn, Alabama.

"5. That the attorney for the defendant has contacted National Home Video, Inc., a television video service here in Selma, Alabama who has expressed a willingness to video record and replay in Court the deposition of Dr. King at a cost of $45.00 per hour plus $.25 per mile travel cost.

"6. That the deposition of Dr. King is essential to the defense of your defendant, he has made no delay in presenting this matter to this honorable Court and the granting of this motion will not delay the trial of this cause."

(R. 1580-81).

On the same day this motion was filed, the trial court held a hearing on this motion.  Defense counsel argued that the deposition of Dr. King was necessary to the defense for "purposes of cross-examination and for purposes of attacking the findings of the Lunacy Commission in that particular test."  (R. 68).  The prosecutor argued that the Lunacy Commission Report (including the M.M.P.I. results) had been available to Dr. Sapala for at least a month and she could have alerted the trial court much earlier of any problems which she had with the Report.  The prosecutor objected to scheduling a deposition four days prior to trial since he was involved in his preparation for the trial at bar.  He also pointed out that the deposition would not be admissible at trial unless there was proof that Dr. King would be unavailable to testify at trial and the only evidence of his unavailability was defense counsel's assertions to this effect.  See Ala.Code, § 12-21-262 (1975) (depositions cannot be read into evidence at trial "if it appears that the witness is alive and able to attend court and within its jurisdiction").

95

The following is the trial court's discussion with defense counsel concerning her reasons for denying the motion to depose Dr. King.

"THE COURT: As far as the Court's ruling as to this motion, first of all, the Court wants to note that there's been one continuance in this case because of Dr. Sapala.  I understand that it was because of a death in her family and that she had no control over that situation.  However, she has in this Court's opinion, had sufficient time to interview the Defendant and make any notations from the reports as filed.  Now if she chooses to wait until five days before trial or a week before trial to look at the report that she was supposed to be assisting defense counsel in evaluating, then that's a matter that may need to be taken up as far as the Court's considering her for appointment in the future.  The Court has a problem with her statement in paragraph one and two of the motion that she found flaws in the tests and that it's defective and then turn right around in paragraph two and say that she doesn't, is not an expert in that area of testing.  So those are almost contradictory.  She appears to be, and I realize that she's not here to testify and there's no affidavit attached to the motion, but she appears to be telling the Court two different things.  That she does have a point in one paragraph and in the second one she doesn't have a point and you need to call in an additional doctor or expert.

"MR. BOYNTON: May I just-I think I can explain that.  The position of Dr. Sapala is that while she is a psychiatrist, she is not an expert in the field of testing as a psychologist would be.

"THE COURT: The Court's trying to get across the point that this lady has had that report and she is well aware of the procedure that Taylor Hardin uses and she knew that test would be in that report and if she wasn't capable of making an appropriate finding or using that test, then I think that she's had more than enough time to advise the Court of that three or four weeks ago than to wait until the eve of the trial and then suddenly decide that she's not an appropriate person to look at the report.

96

"Now let me jump down to paragraph five, there's a request here as to deposition being taken by video. The Court would deny that at this time and until such time as that would be shown to be a necessity or a necessary expense and that the expense as set out thereby, National Home Video, was shown to be reasonable and that other services, whether in Auburn area where the doctor is or in the local area, that those are competitive prices and that that's not an unreasonable expense then-well, the Court really doesn't think that we have to get to that issue until this gentleman can be shown to be unavailable and I think Mr. Greene's argument is correct, that until such time as that there is a showing to the Court some reason why he should not be subpoenaed to Court, then the Court doesn't have authority to order that deposition or to allow that deposition to be in evidence.

"MR. BOYNTON: Am I to understand that I could possibly redo my motion at a later time upon a showing of his unavailability, but then, of course, if he's unavailable, I don't know when he would then be available for the deposition to be taken.

"THE COURT: That's not it.  I'm saying that at this time I think that the motion is premature because there hasn't been any showing to the Court that he is not available.  Now I understand and have no problem working with the gentleman if he has other scheduling engagements as to attempting to sit down with State and defense and give him a time certain to appear for the test or shift the order of your witnesses during the proceeding to make his appearance easier on him, but I think at this time, the motion is due to be denied.

"MR. BOYNTON: Your Honor, excuse me.  What portion of that motion then would be-would you be denying?

"Now, I don't know, but my complete understanding is that he cannot come, if he had come, then would you then order the State of Alabama to pay for his expenses to come to Selma or would that then be on

the part of the defense to do it?

"THE COURT: I think then you would have to file for your extraordinary expenses and have it approved prior to his travel.  You've got to show, you know, that he-I think you'll have to show the Court that he's necessary and that the expenses that he's charging for travel are reasonable expenses.

"MR. BOYNTON: Yes, ma'am. One thing on that just for the information of the Defendant.  As it relates to showing that his expenses are reasonable, I earlier heard you mention about how we would go into that with the National Home Video, but would you then be asking me to bring in experts who are in this field to testify that he-

"THE COURT: I'm saying that if you come in here and ask the Court to grant x-amount of dollars for the gentleman and that it's not split up as to what his travel expenses are, his time, then I'm not going to pay the gentleman, or the State, or order the State to pay him to show up at 8:00 Monday morning and sit here until 6:00 Friday, you know, and to cover motel expenses and travel and all that time.  I don't think that would be reasonable and I wouldn't even consider that.

"MR. BOYNTON: Thank you, very much."

(R. 75-78).

Section 12-21-260, Code of Alabama 1975 states,

"(a) The defendant may take the deposition of any witness who from age, infirmity or sickness, is unable to attend court or who resides out of the state or more than 100 miles from the place of trial, computing by the route usually traveled, or who is absent from the state or where the defense, or a material part thereof, depends exclusively on the testimony of the witness.

"(b) When the defendant desires to take the deposition of any witness under the provisions of subsection (a) of this section, he must make affidavit

before some officer authorized to administer oaths, setting forth some one or more of the above causes for taking the deposition and that the testimony of the witness is material and must file with the clerk interrogatories to be propounded to the witness, a copy of which interrogatories must be served on the prosecutor or on the district attorney, if either of them is in the county.  Such prosecutor or district attorney may, within a like period of 10 days, file rebutting interrogatories, at the expiration of which time or, if no cross-interrogatories are filed, at the expiration of 10 days from the filing of the interrogatories filed, and the deposition must be taken at such time and place as the commissioner may appoint.  If neither the district attorney nor prosecutor is in the county, service of the interrogatories may be had by filing the interrogatories in the office of the clerk for 10 days." (Emphasis added).

After our review of § 12-21-260 and the trial court's reasons for denying the appellant's motion to depose Dr. King, this court is convinced the trial court did not abuse its discretion by denying this motion in question.  See Weatherford v. State, 369 So. 2d 863 (Ala. Crim. App.), cert. denied, 369 So. 2d 873 (Ala.), cert. denied, 444 U.S. 867, 100 S. Ct. 141, 62 L. Ed. 2d 91 (1979).

The appellant further alleges that the trial court's failure to appoint Dr. King as an expert was a violation of Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985).  In Ake, the United States Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one."  Ake, 105 S. Ct. at 1091-92 (emphasis added).

The appellant argues that a "psychiatrist's assistance" also includes the assistance of a psychologist.  The Supreme Court's opinion in Ake is limited to a "psychiatrist's assistance."  Whether an indigent defendant has a constitutional right to State-provided non-psychiatric assistance has yet to be resolved by the United States Supreme Court.  In the only case in which the Supreme Court has addressed the right to non-psychiatric assistance, Caldwell v. Mississippi, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231

99

(1985), the court stated,

> "Given that petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judge's decision.  Cf. Ake v. Oklahoma, 470 U.S. 68, 82-83, 105 S. Ct. 1087, 1096-1097, 84 L. Ed. 2d 53 (1985) (discussing showing that would entitle defendant to psychiatric assistance as matter of federal constitutional law).  We therefore have no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought."

> Caldwell, 105 S.Ct. at 2637 n. 1.

After reviewing the record in this case, we find that the appellant's due process rights were not denied by the trial court's failure to appoint Dr. King as an expert in this case.  First of all, a psychiatrist, Dr. Sapala, was provided to assist the defense in this case and, thus, the trial court followed the principles set out in Ake.  Secondly, we do not find a specific request by defense counsel to have Dr. King appointed as an expert in this case.  Thirdly, and most importantly, defense counsel "offered little more than undeveloped assertions" that Dr. King's assistance would be beneficial to the defense.

Defense counsel alleged that Dr. King believed the M.M.P.I. test was defective but defense counsel did not explain in what regard the test was defective and how the M.M.P.I., if defective, would be significant to the issue of the appellant's insanity.

> " Ake and Caldwell, taken together, hold that a defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand.  Rather, a fair reading of these precedents is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial."

100

Moore v. Kemp, 809 F.2d 702, 712 (11th Cir.), cert. denied, 481
U.S. 1054, 107 S. Ct. 2192, 95 L. Ed. 2d 847 (1987). (Footnotes omitted).

We find that the appellant has failed to demonstrate to the
trial court how Dr. King would have been of assistance to the
defense or how denying him the assistance of Dr. King would result
in a fundamentally unfair trial.  Thus, this issue is without merit.

McGahee v. State, 554 So. 2d 454, 466-69 (Ala. Crim. App. 1989) (emphasis in original).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals, for the reasons set forth in its memorandum opinion, that petitioner failed to

establish that his constitutional rights were violated by the trial court's denial of his motion to

depose Dr. Glen King.

Supreme Court precedent establishes the principle that the
due process clause of the fourteenth amendment requires that the
state, upon request, provide indigent defendants with the "basic
tools of an adequate defense . . . when those tools are available for a
price to other prisoners."  Britt v. North Carolina, 404 U.S. 226,
227, 92 S.Ct. 431, 433, 30 L. Ed. 2d 400 (1971); see also Ake v.
Oklahoma, 470 U.S. 68, 77, 83, 105 S.Ct. 1087, 1094, 1097, 84 L.
Ed. 2d 53 (1985); Ross v. Moffitt, 417 U.S. 600, 94 S. Ct. 2437, 41
L. Ed. 2d 341 (1974); Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585,
100 L. Ed. 891 (1956) (plurality).  The state need not provide
indigent defendants all the assistance their wealthier counterparts
might buy; rather, fundamental fairness requires that the state not
deny them "an adequate opportunity to present their claims fairly
within the adversary system."  Ross, 417 U.S. at 612, 94 S. Ct. at
2444-45; see also Ake, 470 U.S. at 77, 105 S. Ct. at 1094.  In the
case at hand, petitioner contends that the state trial court, in denying
his request for the appointment of a "criminologist or other expert
witness," deprived him of a basic tool of an adequate defense and
therefore rendered his trial fundamentally unfair.

. . .

The Supreme Court adopted the approach described above
in Ake v. Oklahoma, 470 U.S. 68, 83, 105 S. Ct. 1087, 1097, 84 L.
Ed. 2d 53 (1985), and in Caldwell v. Mississippi, 472 U.S. 320, 323

n. 1, 105 S. Ct. 2633, 2637 n. 1, 86 L. Ed. 2d 231 (1985) (plurality). In <u>Ake</u>, the Court concluded that the due process clause's guarantee of fundamental fairness is implicated "when [an indigent] defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial" and that "the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." <u>Ake</u>, 470 U.S. at 83, 105 S. Ct. at 1097.

. . .

In <u>Caldwell</u>, also a capital case, the Supreme Court was faced again with a claim that a trial court's refusal to provide a defendant with expert assistance denied the defendant a fair trial. Caldwell asked for the appointment of a criminal investigator, a fingerprint expert, and a ballistics expert. His requests were denied. The state supreme court affirmed the denials "because the requests were accompanied by no showing as to their reasonableness." <u>Caldwell</u>, 472 U.S. at 323 n. 1, 105 S. Ct. at 2637 n. 1. For example, the motion requesting the ballistics expert included only the general statement that the expert was necessary; the motion failed to explain in specific terms why the expert was needed. <u>See Caldwell v. State</u>, 443 So. 2d 806, 812 (Miss.1983), <u>rev'd on other grounds sub nom.</u> <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985) (plurality). The Supreme Court concluded that because "petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial, [there was] no deprivation of due process." <u>Caldwell</u>, 472 U.S. at 324 n. 1, 105 S. Ct. at 2637 n. 1 (citation omitted).

. . .

<u>Ake</u> and <u>Caldwell</u>, taken together, hold that a defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand. Rather, a fair reading of these precedents is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.

. . .

[T]he defendant should inform the court why the particular expert is necessary. We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a

> detailed analysis of the assistance an appointed expert might
> provide.  We do believe, however, that defense counsel is obligated
> to inform himself about the specific scientific area in question and
> to provide the court with as much information as possible
> concerning the usefulness of the requested expert to the defense's case

Moore v. Kemp, 809 F.2d 702, 709-12 (11th Cir. 1987) (emphasis in original) (footnotes omitted).

As the state court found, petitioner was provided access to the expert services of a psychiatrist, Dr. Sapala, to assist with his defense.  Although petitioner's subsequent request for additional psychiatric assistance from a psychologist, Dr. King, was denied, petitioner failed then, and has failed now, to establish a reasonable probability that expert assistance from Dr. King was necessary to the defense and that, without such assistance, petitioner's trial was rendered unfair. Therefore, petitioner's claim that his constitutional rights were violated, as set forth in habeas claim 62, is without merit.

In claim 68, petitioner alleges that his constitutional rights were violated by the State's failure to turn over exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). (Doc. 1 at 79).  Petitioner raised this claim during his Rule 32 proceedings, and, in its memorandum opinion affirming the denial of relief on this claim, the Alabama Court of Criminal Appeals stated:

> McGahee next argues that the prosecutors failed to make
> available to the defense the complete prosecution file and that, as a
> result, "exculpatory materials and critical mitigating evidence were
> withheld. . . ."  (McGahee's brief at p. 110.)  Specifically, he claims
> that the officers who arrested him in September 1985 knew that he
> had been drinking, but that the officers testified at trial that they did
> not detect evidence of his intoxication.  He further argues that the
> suppression of the evidence of intoxication, combined with the
> officers' incorrect testimony, increased the likelihood that he was
> improperly convicted and unlawfully sentenced to death.  The trial

court denied the claim, finding that trial counsel testified at the Rule 32 hearing that there had been "open file" discovery in the case and that he had copied the district attorney's file.  The court further noted that McGahee had failed to call the officers at the evidentiary hearing, so he did not challenge their trial testimony regarding McGahee's lack of intoxication.

We agree with the trial court's analysis and conclusions. McGahee failed to support the claims raised in his petition.  Trial counsel testified that an open file policy was observed, so that portion of his claim fails.  There being no evidence presented at the Rule 32 hearing to support the claim regarding incorrect testimony from the officers, that portion of the claim also fails.  The trial court correctly denied McGahee's claims regarding withheld discovery materials, and that judgment is affirmed.

McGahee v. State, 885 So.2d 191, 227-28 (Ala. Crim. App. 2003).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the reasons set forth in its memorandum opinion, that petitioner failed to establish that his constitutional rights were violated by the State's failure to turn over exculpatory evidence in violation of Brady v. Maryland.  Petitioner claims that the State had "intoxication evidence" that he had been drinking on the morning of the murders and failed to disclose that information.  (Doc. 31 at 146).  However, petitioner has failed to identify the alleged "intoxication evidence" that purportedly was withheld with him.  Simply put, there is no evidence in the record, or in petitioner's petition, to support this claim.  Therefore, petitioner's claim that his constitutional rights were violated, as set forth in habeas claim 68, is without merit.

Accordingly, with respect to each of petitioner's guilt phase habeas claims, petitioner has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law set forth in Supreme Court case law or that the court decided the case differently than the Supreme Court did in a previous

case presenting a set of materially indistinguishable facts.  Likewise, petitioner has failed to

establish under the "unreasonable application" clause that the state court, though recognizing the

correct governing principles from the Supreme Court's decisions, unreasonably applied those

principles to the facts in this case.  Thus, petitioner has not established that he is entitled to relief

under § 2254(d)(1).

In addition, petitioner has failed to establish entitlement to relief under § 2254(d)(2) by

showing that the decision of the Alabama Court of Criminal Appeals was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  This Court must presume as correct the determinations of all factual issues made by

the state court.  28 U.S.C. § 2254(e).   Accordingly, petitioner's petition for habeas relief on the

basis of claims 1, 48, 61, 62, and 68 is due to be denied.

       4.      Waiver of Procedural Default: Claims 45 and 51.

Although it appears that claims 45 and 51 are procedurally defaulted, the State has waived

procedural default as to these claims.  (Doc. 21 at 22).  Therefore, the Court will consider them,

*de novo*.  See Moon v. Head, 285 F.3d 1301, 1315 n.17 (11th Cir. 2002) (where the State failed to

raise petitioner's procedural default as a defense, the court would consider the claim on the

merits).

In claim 45, petitioner alleges that, during closing argument at trial, the prosecutor

improperly compared the rights of the victims with those of petitioner (Doc. 1 at 52; Doc. 31 at

119).  Petitioner refers to the prosecutor's argument that: "[petitioner] held court right there in

that room on Connie Brown. . . .  He just pumped bullets into her and decided as judge and jury

that she should die. . . .  We're going to afford him everything that our American system of justice

gives, and rightfully so.  We're going to pick it to pieces and we're going to argue every little

point about it and then we're going to put a terrible weight on you and tell you to go back in the

jury room and argue again.  Somehow it just doesn't seem fair."  (Doc. 10, Vol. 16 at 3032-33).

> [W]hether [a habeas petitioner] is entitled to relief on the ground of
> improper prosecutorial argument depends on "whether the
> prosecutor's comments 'so infected the trial with unfairness as to
> make the resulting conviction a denial of due process.' "  Darden v.
> Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d
> 144 (1986) (quoting Donnelly v. De Christoforo, 416 U.S. 637, 94
> S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  In determining whether
> improper argument rises to this level, "we must ask whether there is
> a 'reasonable probability' that, but for the prosecutor's offending
> remarks, the outcome of the [guilt or] sentencing [proceeding]
> would have been different."  Williams v. Kemp, 846 F.2d 1276,
> 1283 (11th Cir.1988), cert. denied, 494 U.S. 1090, 110 S. Ct. 1836,
> 108 L. Ed. 2d 965 (1990) (citations omitted). "[A] reasonable
> probability is a probability sufficient to undermine confidence in
> the outcome."  Id.

Kennedy v. Dugger, 933 F.2d 905, 914 (11th Cir. 1991) (footnote omitted).

Having reviewed the record in this case, the Court finds that petitioner is not entitled to

relief on the basis of this claim.  As discussed above in relation to habeas claim 26, the record

shows that the trial court instructed the jury that counsel's arguments were not evidence in the

case and that any statements or arguments made by counsel which were not supported by the

evidence or by the law, as it had been given to them by the court, should be disregarded.  (Doc.

10, Vol. 7 at 1244).  Having considered the prosecutor's remarks and the trial court's instructions,

in their entirety, the Court finds that petitioner has failed to show that the challenged remarks

rendered his trial fundamentally unfair.  Therefore, petitioner is not entitled to habeas relief on the

basis of claim 45.

In claim 51, petitioner alleges that the trial court erred in finding the "heinous, atrocious, or cruel" aggravating circumstance based on evidence that petitioner's actions were designed to embarrass and humiliate his victims.  (Doc. 1 at 60).  The Court has already addressed this issue in relation to habeas claim 13.  For the reasons set forth in that discussion, the Court likewise finds claim 51 to be without merit.

Conclusion

Based on the foregoing and on the Court's Order of  February 15, 2007 (Doc. 22), the Court finds that petitioner's constitutional rights were not violated.  Accordingly, petitioner's request for habeas corpus relief is **DENIED**.

**DONE** and **ORDERED** this the 12th day of October, 2007.


s/ Kristi K. DuBose
KRISTI K. DUBOSE
UNITED STATES DISTRICT JUDGE